ANNA M. NEWTON, ADMINISTRATRIX (ESTATE OF
EVELYN M. ROSER), ET AL. *v.* JOHN K.
BARNETT ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued February 5—decided April 28, 1959

*DeLancey Pelgrift,* with whom was *George D. Stoughton,* for the appellants (defendants).

*Joseph P. Cooney,* with whom were *Henry F. Cooney* and, on the brief, *John F. Scully,* for the appellee (plaintiff John W. Roser).

DALY, C. J. In this negligence action the jury returned a verdict for the named plaintiff to recover $35,100 damages from the defendants and for the

other plaintiff, John W. Roser, to recover $61,000. The trial court denied the defendants' motion to set aside the verdict "in favor of John W. Roser." The defendants have appealed only from the judgment for him. They claim that the court erred in denying their motion, in its charge to the jury and in its determination that certain matters in the charge and the exceptions to it involved moot questions because they were concerned solely with damages for the wrongful death of the named plaintiff's decedent and those damages have been paid. The defendants have abandoned their remaining assignment of error. No appeal was taken from the judgment for the named plaintiff.

The existence of an actual controversy is an essential requisite to appellate jurisdiction. It is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief, or from the determination of which no practical relief can follow. *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22. As no practical benefit could follow from our determining whether the court erred in charging the jury on the question of damages for the wrongful death of Evelyn M. Roser, it is not incumbent upon us to make that determination. *Rollins* v. *Holcomb,* 122 Conn. 664, 666, 190 A. 260. The trial court did not err in concluding that, since those damages have been paid, the question whether it erred in the charge as to them is moot. We do not consider the defendants' claim that the court erred in charging the jury on the law of damages as it relates to the plaintiff John W. Roser, since the matter was not covered by an exception to the charge. *Crowder* v. *Zion Baptist Church, Inc.,* 143 Conn. 90, 98, 119 A.2d 736; Practice Book § 153.

The defendants maintain that the award of $61,000

to John W. Roser, hereinafter called the plaintiff, is excessive and that therefore the court erred in denying their motion to set aside the verdict in his favor. The plaintiff offered evidence to prove and claimed to have proved the following facts: At the time he was injured on April 14, 1957, he was fifty-six years of age, had a life expectancy of 18.2 years, and was active and in good health. On admission to the hospital on that date, he was in severe pain which became increasingly acute in the area of the upper anterior left chest, where there was considerable swelling and ecchymosis. He sustained a grossly swollen and painful comminuted fracture of the left os calcis, which was completely shattered, with marked involvement of the subtalar joint, and the heel was pushed upward out of normal position. He complained of pain in the area of the left hip, where there was ecchymosis and swelling immediately below the great trochanter. There was tenderness in the cervical spine, and a deep laceration five centimeters in length on the lateral aspect of the left knee. Further painful injuries were sustained to the left chest in the region of the costochondral junction of the upper three or four ribs, where a snapping noise could be heard on inspiration, with palpable instability of the ribs noted. The plaintiff sustained a severe injury to his right shoulder, and there were multiple contusions and abrasions over the body generally. X-rays disclosed an undisplaced fracture of the seventh rib on the left. From the moment of the collision, the plaintiff endured great difficulty and pain in trying to breathe.

The increasing severity of the chest pain and the breathing difficulty necessitated performance of intercostal nerve blocks on April 16 by injection of novocain between the nerves on the undersurface

of the ribs. About an hour after this procedure, the plaintiff had extreme difficulty in breathing, could not catch his breath and was cyanotic and extremely apprehensive. Portable x-rays then taken showed that the left lung had been punctured and had collapsed, and the heart and mediastinal structures were displaced to the right, pressing against the trachea and esophagus, a condition known as pneumothorax. This required emergency measures because all respiration and air in the lungs could be completely shut off. A large bored needle was inserted into and remained in the chest where air had accumulated and pressed the underlung, heart and mediastinum to the right, and a large syringe was used to withdraw the air quickly, this procedure being known as thoracentesis. Although the breathing of the plaintiff was improved, he was still in critical condition because of the pain involved and the danger of recurrence of the pneumothorax condition. The severe chest pain existed almost from the moment of impact and would have persisted whether or not the plaintiff had pneumothorax. The plaintiff was conscious throughout these procedures and was extremely apprehensive of death then and thereafter.

Special nurses were assigned to the plaintiff. As he continued to complain of the severity of his pain, frequent administration of drugs was necessary. He was placed in an oxygen tent, and oxygen was later administered to him by face mask and then by taping a tube into his nostrils. His condition also necessitated intravenous transfusions. The plaintiff endured frequent uncontrollable and painful coughing spells throughout his hospitalization and had great difficulty trying to expectorate to relieve the condition of his chest. While he was still on the critical

list, on April 23, the pneumothorax recurred. The plaintiff again had to undergo the drastic, painful emergency procedures to relieve the extreme chest pain and the severe shortness of breath and to correct the position of the heart and mediastinal structures. Both pneumothorax crises were a painful accumulation of the injuries sustained by the plaintiff. Even after alleviation of the pneumothorax conditions which acutely intensified the plaintiff's pain and breathing difficulty, the chest pain continued to be severe. The persistence and severity of the plaintiff's pain and discomfort in the chest and shoulder, and throughout the body generally, required drugs, narcotics and medication for relief of pain, day and night, virtually every one of the forty days of his hospitalization. At the time of trial, in October, 1957, the chest condition still existed and the plaintiff still had a snapping sensation due to the fractures at the point where the ribs join the sternum. This area is cartilaginous and heals very poorly or does not heal at all, so that the instability which results from fracture here persists for a long period of time.

The grossly swollen and comminuted fracture of the left os calcis immediately resulted in pain and discomfort to the plaintiff. The fracture lines ran up and into the ankle joint, the heel bone and the bone above it. Conditioning for operative procedures was attempted by pressure bandages, immobilization, plaster casts, foot elevation and leg traction. In May, 1957, the plaintiff underwent four operative procedures in connection with the injury to his left foot, as follows: (1) Application of a short leg cast; (2) a bivalving cast was applied to the left leg; (3) a bone graft was taken from a donor area in the shin and placed completely through the os calcis area in

an attempt to secure union or stability over a period of time; (4) application of a short leg cast. The purpose of the bone graft was to sacrifice mobility of the joint for stability and to block motion so there would not be continuing pain. The result was not completely successful from the point of view of objective. The patient's gait or ability to walk had been impaired because the severity of his chest condition precluded attempting this operative procedure at the time of his injury. The plaintiff walked with a pronounced limp, and his ability to stand still was affected. A long course of admittedly painful physical rehabilitative procedures, lasting at least six months, would be necessary to attempt to improve the gait and musculature of the leg as a preparation for future surgery. At the time of trial, the plaintiff was undergoing such rehabilitation, with daily treatments at the Hartford Hospital. His heel was shown by x-ray to be pointed toward the inside, since no attempt to correct this was made at the time of the original surgery. He had a permanent disability of at least 30 per cent of the left foot. Further surgery to the heel and ankle joints would be necessary to improve the weight-bearing alignment and to correct the pointed heel. Even with optimum results, the plaintiff would still have at least 15 per cent permanent disability of the left foot. He would be hospitalized for this surgery for two weeks. He would not be able to engage in his regular employment for four months, and the resulting loss of earnings would be about $2300. The hospitalization and surgical cost would approximate $1000. There would be pain and suffering at the time of the surgery and thereafter.

The injury to the right shoulder was severe and painful and involved the shoulder joint and soft tissues, with ecchymosis and swelling. There was no

improvement generally of the shoulder condition at the time of trial. There was severe restriction of motion in attempting elevation, and elevation was painful. The shoulder pain and restriction endured by the plaintiff during his hospitalization greatly increased his discomfort and necessitated frequent administration of drugs. The injury to the shoulder resulted in a permanent loss of function of 15 per cent. The injuries to the plaintiff's left knee caused a stiffening of the knee joint and added pain and discomfort when the leg was placed in a cast. Acute pain and swelling of the knee involved phlebitis and tendonitis. The plaintiff still endures pain when he lifts his left knee.

For about twenty years following 1920, the plaintiff had been a professional baseball player and manager of baseball teams in various leagues throughout the country. After 1940, he was employed at Pratt and Whitney Aircraft. He was a buyer in the purchasing department for twelve years. At the time he was injured, he was earning $522 per month. He had had an exceptional attendance record. He maintained an avid interest in baseball and coached the Pratt and Whitney team for about five years.

The plaintiff was hospitalized from April 14 to May 23, 1957. He was discharged on crutches, which he used for six weeks, and thereafter he used a cane for several weeks. He returned to work on July 29, 1957, although he limped and could not walk without the aid of a cane and did not breathe well. He was unable to perform his regular duties, but his employer allowed him to engage in whatever work he could perform. The plaintiff lost $2200 in earnings. His medical expenses to the time of trial were $2291. His future medical costs, not including the rehabilitative treatment, would be approximately $1000.

Future loss of wages for a period of four months would approximate $2300. The plaintiff's automobile was totally demolished and the property damage sustained amounted to $1020. The total special damages to the time of trial were $5511; those expected in the future would approximate $3300. The plaintiff, during his entire life, will have disability resulting from the permanency of the injuries to his shoulder and leg. There will be a diminution of his activities.

The award of $61,000 damages to the plaintiff John W. Roser is not so large as to offend the sense of justice and compel a conclusion that the jury were influenced by partiality, prejudice or mistake. *Fairbanks* v. *State,* 143 Conn. 653, 661, 124 A.2d 893; *Gorczyca* v. *New York, N.H. & H.R. Co.,* 141 Conn. 701, 703, 109 A.2d 589.

There is no error.

In this opinion the other judges concurred.