The appeal herein by the plaintiff city of Hartford is prosecuted from an order of the defendant public utilities commission, hereinafter *Page 66 
referred to as PUC, granting an interim rate increase to the defendant Connecticut Natural Gas Corporation, hereinafter referred to as CNG. CNG is a public service company, franchised by the PUC to provide gas services, at rates and charges regulated by the PUC, within its assigned territory in the state of Connecticut.
 I
The sequence of events is as follows. On July 20, 1972, CNG filed with the PUC an amendment of its existing rate schedule, effective August 1, 1972, proposing an increase in its annual revenues, in the total sum of $5,453,000. The filing included a request for interim relief, under the PUC's rules of practice.
By its letter of July 24, 1972, the PUC suspended the rate increase, pending its further investigation and order, pursuant to General Statutes § 16-19.
Under date of September 14, 1972, the PUC, after considering CNG's testimony and exhibits, made an interim finding and order, allowing CNG an annual rate increase of $1,750,000, by way of an interim order, in lieu of $2,950,000 requested by CNG, as interlocutory relief. The interim order was made subject to the approval of an interim rate schedule; the filing of a corporate assurance, equal to the entire amount allowed by the PUC; and an order for refund of the increase, together with interest at the annual rate of no less than 8 percent, conditional upon the final order of the PUC, at a subsequent date.
An order of supersedeas, issued on October 12, 1972, was modified on October 13, 1972. The modified order allowed CNG to collect revenues arising from the interim order, pending a final order of the PUC. This was conditioned on the filing by CNG of a *Page 67 
corporate assurance in the sum of $1,750,000, and on the further condition that any subsequent refunds would bear 8 percent annual interest.
By writ dated October 12, 1972, the city commenced an appeal to this court, alleging that the interim order was illegal and unconstitutional, on various grounds. The city alleges that it initiated the appeal on behalf of itself, as a gas customer, and also on behalf of certain Hartford residents who were also gas customers. The appeal prays that this court vacate and set aside the interim finding and order, pending a plenary hearing on the CNG application, and "the making and filing of a final Finding and Order by said Defendant Commission thereon."
Two motions to erase have been filed, and remain for determination. The motion of CNG urges that the plaintiff's appeal was brought under §§ 16-35
through 16-37 of the General Statutes, but that those sections were repealed, upon enactment of the Uniform Administrative Procedure Act, hereinafter referred to as UAPA, which became effective January 1, 1972. General Statutes, c. 54. CNG also claims that, since the UAPA now controls judicial review of the interim order, the appeal is defective, because of the plaintiff's failure to exhaust its administrative remedies, pursuant to the UAPA.
The PUC alleges, in a similar vein, that the plaintiff failed to exhaust its administrative remedies, pending a final order of the PUC. The PUC asserts that the final order by it would render moot any decision by this court on the interim order and, finally, that there is no legal support for judicial review of the interim order.
Both motions, for the most part, cover the same basic legal theories, and will therefore be considered together. *Page 68 
The court finds that both motions have merit, subject to the comments hereinbelow.
Shortly following the conclusion of oral arguments before this court, on the motions to erase, the PUC, on December 27, 1972, issued its finding and final order. It approved a rate schedule for CNG, providing additional annual revenues of about $1,369,428, over and above the rates existing prior to CNG's initial application. The final increase was thus substantially less than the sum of $1,750,000 authorized in the interim order of September 14, 1972. The order of December 27, 1972, further provided for refunds to CNG customers of interim charges in excess of the final amount allowed, together with interest at 8 percent per annum.
 II
The city's appeal specifically recites that it was proceeding under title 16 of the General Statutes, "Public Service Companies," and more particularly, §§ 16-35 through 16-39 thereof. Both the PUC and CNG argue that the city was in error in relying on title 16; that the correct avenue of appeal is the UAPA; and that enactment of the UAPA, pursuant to various provisions thereof, operated to repeal the pertinent sections of title 16.
Public Act No. 870, as passed by the 1971 session of the General Assembly, became effective September 1, 1971. In §§ 42 and 43, it amended §§ 16-35
and 16-39 of the General Statutes, to provide for transfer of appeals from the PUC, so that they would be returnable to this court, rather than to the Superior Court. The same session of the legislature adopted Public Act No. 854, now known as the UAPA. Both acts were approved by the governor on the same day, to wit, July 15, 1971. *Page 69 
Section 20 of the UAPA does provide for repeal of any provisions of the General Statutes "inconsistent" with the UAPA. There is no specific reference in the UAPA to a repeal of any portions of title 16. If any repeal of those sections took place, it must arise from a repeal by implication.
In this connection, § 4-183 (a), as part of the UAPA, provides that the method of judicial review contained therein "does not limit utilization of or the scope of judicial review available under other means of review, redress, relief or trial de novo provided by law."
It is thus clear that the UAPA, by its very terms, was not intended to supersede or nullify alternate methods of attack on an administrative decision available under other statutory procedures. To the same effect, see 2 Cooper, State Administrative Law, p. 607, which discusses a comparable provision in the revised model state administrative procedure act.
The argument for repeal by implication is not a persuasive one. The amendments to §§ 16-35 and 16-39 were passed at the very session in 1971 at which the UAPA was enacted. It is difficult to conceive that the General Assembly intended, almost simultaneously, to amend title 16, and thereupon to enact legislation repealing the sections just amended.
Repeal of statutes by implication is not favored.Fair Haven W.R. Co. v. New Haven, 75 Conn. 442,446; Woodmont Assn. v. Milford, 85 Conn. 517,520; Stock v. Cox, 125 Conn. 405, 417. In the event of a claim of repugnancy between two statutes, they are to be construed, if reasonably possible, so that both are operative, giving effect to the legislature's express intention. Cicala v. Administrator,161 Conn. 362, 365. The legislature is presumed to have *Page 70 
enacted a law in view of existing relevant statutes, and intended it to be read with them, so as to make one consistent body of law. Little v. Ives, 158 Conn. 452,455.
It is concluded that §§ 16-35 and 16-39 are the "other means of review, redress, relief, or trial de novo provided by law," as contained in § 4-183 (a). They were not repealed, expressly or impliedly, as a consequence of enactment of the UAPA. They remain in force and effect, as an alternate means of seeking judicial relief from orders of the PUC, in a proper case.
The court's conclusion is fortified by Public Act No. 261, enacted at the 1972 session of the General Assembly and approved May 18, 1972. It is captioned, "An Act Concerning the Powers of Transit Districts Formed under Chapter 103a." Section 3 of Public Act No. 261 amends § 7-273d of the General Statutes, and provides for appeals by various aggrieved parties from certain orders of the transit district to the public utilities commission. Section 3 further states: "[S]uch appeal shall conform to the standards and procedure for appeals to the courts from decisions of the public utilities commission as provided in sections 16-35 through 16-39, inclusive."
The obvious intention of Public Act No. 261 was to recognize the existence and validity of §§ 16-35
through 16-39, inclusive, as of the date of enactment of that act in 1972. If those provisions of title 16 had been previously repealed, by implication, through enactment of the UAPA in 1971, it is highly improbable that the General Assembly would have referred to them, as authority for processing an appeal to the PUC in 1972.
 III
The contents of the finding and final order have been described previously. *Page 71 
The city has been a party in the proceedings before the PUC, both as to the interim and the final order. Its right to appeal from the final order is set forth in § 16-35 of the General Statutes, the statute on which the city relies. It is true that § 16-35, if its terms are read literally, purports to authorize appeals to this court from virtually any "order, authorization or decision" of the PUC. The language of § 16-35 must, however, be interpreted in the light of the fundamental rule of law which provides that an appellant must exhaust all his administrative remedies, as a condition of his appeal from the action of an administrative agency. McNish v.American Brass Co., 139 Conn. 44, 53. The express reference in § 4-183 (a) of the UAPA to the "exhaustion" doctrine,[1] which the city strives to avoid, by its reliance on title 16, is the accepted rule to the same effect, prevailing even prior to enactment of the UAPA. See Windsor v. Windsor Police Dept.Employees Assn., Inc., 154 Conn. 530, 539.
In fact, the plaintiff's brief contains a tacit admission of the crucial flaw therein, to wit, the lack of finality of the interim order. The city's prayer for relief seeks to nullify the interim order, only pending a full hearing on the merits of CNG's application and the entry by the PUC of a final order, both of which conditions have taken place. Thus, the plaintiff, somewhat reluctantly, recognizes the hard reality that the interim order, at best, is preliminary and short-lived, and that the final order is the vital and controlling administrative action, with respect to an appeal.
The interim order contained nothing which could give it the status of finality. It stated that the *Page 72 
increase, instituted under bond, would be subject to a refund, "pending the Commission's final determination." Subsequent proceedings before the PUC were necessary, and did occur, leading to the final order.
The final order of December 27, 1972, specifically states that it is "in substitution" for the interim order. In other words, the December 27 order, to the extent that it allowed a rate increase substantially below that authorized in the interim order, amended and superseded the interim order. For all practical purposes, the interim order no longer had any force or effect, following a fifteen-day temporary use of the interim rates pending the filing of a rate schedule permitted by the final order.
As a leading text states: "[T]he administrative agency is entitled to the first and the next-to-the-last word. It must be given an opportunity to speak first ... and it cannot be deprived of the power to pass upon the case until it has spoken its final word with reference thereto." 2 Cooper, State Administrative Law, p. 572. To the same effect, seeFlorentine v. Darien, 142 Conn. 415, 431.
In Brown v. Hausman, 94 P.U.R.3d 289, the court sustained the validity of a temporary bus fare increase granted by the PUC to the Connecticut Railway and Lighting Company pursuant to § 16-19
of the General Statutes. In so doing, it rejected an attack on the constitutionality of the procedure utilized, in view of the fact that the company had posted a bond, and was ordered to give receipts to its customers, pending a final determination by the PUC on a permanent rate increase. The court noted that the provision for the delivery of receipts covering the possibility of a refund was a substantial measure of due process afforded the complaining passengers, pending a final ruling of the PUC. The relevance of Brown to the instant situation is obvious. *Page 73 
The "exhaustion" rule has merit, both in concept and in its application to this case. It avoids a needless multiplicity of appeals, essentially based on the same subject matter. It does not deprive the city of its right to seek judicial redress, but merely postpones it, pending a final ruling of the PUC. At that time, as evidenced by the order of December 27, 1972, the actions and errors, if any, of the PUC became fixed and final, on the administrative level, and a more appropriate subject for an appeal. The alleged prejudice to the city, by denial of the interlocutory appeal, seems minimal, or nonexistent.
The right to an appeal is not a constitutional one. It is a statutory privilege, available only to one who has strictly complied with the rules pertaining thereto. Chanosky v. City Building Supply Co.,152 Conn. 449, 451. Unless the statute and applicable rules of law clearly permit such appeals, the courts are without jurisdiction to entertain them. EastSide Civic Assn. v. Planning Zoning Commission,161 Conn. 558, 560; Southern Connecticut Gas Co. v.Public Utilities Commission, 158 Conn. 626, 627.
On this phase, the court concludes that the interim order was not a final order, from which the city could prosecute an appeal, even when an appeal was attempted pursuant to § 16-35 of the General Statutes. The appeal must fail for the additional reason, as a corollary, that the city did not exhaust its administrative remedies, before commencing the present litigation.
 IV
Attention is now focused on the mootness doctrine, as applied to the city's position. It has been noted above that the effect of the final order was to amend and supersede the interim order, and that the recourse of the city, at that juncture, was to prosecute its appeal from the final order, basing the *Page 74 
appeal on whatever allegations of error were appropriate. Such an appeal would thus include any and all claims available to the city, by virtue of its having been a party to the case, from its very inception.
It is clear that the interim order no longer had any real force and effect, upon entry of the final order, either as a mandate to CNG or as a cause for complaint by an aggrieved party, such as the city.
If the court were to entertain and adjudicate the instant appeal, now that the final order has been entered, it would be an exercise in futility. It would be determining issues in the interim order, made moot by the final order.
This court should not decide moot questions, which are disconnected from the granting of actual relief, or from the determination of which no practical relief can follow. New York, N.H. H.R. Co. v.Water Commissioners, 102 Conn. 488, 497; Newton
v. Barnett, 146 Conn. 344, 346; Reynolds v. Vroom,130 Conn. 512, 515; Hirsch v. Braceland, 144 Conn. 464,469; Roy v. Mulcahy, 161 Conn. 324, 328. Likewise, the court should refuse to entertain appeals classified as "academic." Young v. Tynan, 148 Conn. 456,459; Maltbie, Conn. App. Proc. § 339.
 V
The court is highly doubtful whether, on the state of the record, the city is truly "aggrieved," within the meaning of § 16-35 of the General Statutes, by virtue of the interim order, in the light of the subsequent issuance of the final order. Norton v. ShoreLine Electric Ry Co., 84 Conn. 24, 33; Brown v.Hausman, 94 P.U.R.3d 289. Failure to prove aggrievement would constitute a jurisdictional defect. Treat v. Town Plan Zoning Commission,145 Conn. 136, 141. *Page 75 
The defendants, however, did not expressly claim a lack of aggrievement, as a ground of their motions to erase. Hence, the court expresses no final opinion as to this issue. Compare Hoberman v. Lake ofIsles, Inc., 138 Conn. 573, 574; Watson v. Howard,138 Conn. 464, 467.
 VI
The two motions to erase were proper. Practice Book § 94. The court concludes that it has no jurisdiction of the appeal by the city. Pearson v. BridgeportHydraulic Co., 141 Conn. 646, 648; Felletter v.Thompson, 133 Conn. 277, 279-80; Long v. ZoningCommission, 133 Conn. 248, 250; ManufacturersAssn. of Connecticut, Inc. v. Administrator, 20 Conn. Sup. 108,111.
 The issues are found for the defendants. Their motions to erase are granted.