PROSPECT GARDENS CONVALESCENT HOME, INC. *v.* CITY OF NORWALK ET AL.

COURT OF COMMON PLEAS    FAIRFIELD COUNTY    FILE No. 105076

Memorandum filed June 11, 1975

*Lepofsky & Lepofsky,* for the plaintiff.

*Leonard E. Trojanowski, Jr.,* for the named defendant.

NORTON M. LEVINE, J.   The plaintiff owns and operates a convalescent home on Prospect Avenue, Norwalk. It operates and leases, as places of residence for a number of its employees, three homes in the immediate vicinity located, respectively, on Finley Street, Fairview Avenue, and Spruce Street. The employees' duties, for the most part, seem to involve routine maintenance and care of the patients in the main building.

## I

The three homes are single-family dwellings, all situated in residence zones. The predominant character of the area is one-family residential.

The employees occupying the homes are unrelated to each other. About 90 percent of them are female. They pay a fee of $16.60 weekly to the

plaintiff for room and board. The $16.60 includes two daily meals, which may be taken at the cafeteria in the Prospect Avenue building. Each one of the three homes has a single kitchen where each employee has the option to cook his or her individual meal. Since the employees do not work simultaneous shifts and are not related, there is no occasion when all or most of them sit down in any of the three houses to eat meals together.

The plaintiff's testimony indicated that the Finley Street house contains seven beds, the Fairview Avenue house has ten beds, and the Spruce Street house has eleven beds. An employee of the Norwalk health department claimed, however, that a total of thirty-one persons presently reside in the three homes.

On or about March 27, 1975, the fire marshal of Norwalk issued orders to the plaintiff to make certain structural repairs to the homes and referred in his orders to the premises as "rooming houses." At the same time, the plaintiff received two notices from the Norwalk health director, alleging that the plaintiff was operating a rooming house without a permit on Spruce Street and Fairview Avenue in violation of the Norwalk city code. The communications asked that the plaintiff either apply to the health department for a rooming house permit or "discontinue present operation of unlicensed rooming house, and revert dwelling back to a one family status."

A meeting pertaining to the problem was held on April 15, 1975, between agents of the plaintiff and individuals representing various Norwalk city departments. Also in attendance was John Howard, zoning inspector of Norwalk. Howard stated that he could not approve of the plans to

make the necessary structural changes since the plaintiff's operation of the buildings was illegal in a residential zone under § 118-3 of the Norwalk zoning regulations. Section 118-3 provides that in a residential zone there shall be allowed "not more than two (2) paying guests of the occupant of the residence." Howard testified further that, in his opinion, there were no valid nonconforming uses as to any of the three buildings involved.

The plaintiff claimed that the employee occupancy, for the purposes indicated, commenced in the Finley Street residence in 1966, in the Fairview Avenue residence in 1967, and in the Spruce Street residence in 1968. The plaintiff also alleged that the Norwalk zoning regulations, at the time of commencement of such use, authorized the premises to be used as single-family dwellings and further defined "family" as "any number of individuals living and cooking together as a single housekeeping unit."

On January 2, 1974 § 118-1 of the Norwalk zoning regulations amended the definition of "family" to read: "One (1) or more persons occupying a single dwelling unit, provided that unless all members are related by blood or marriage (or adoption), no such family shall contain more than five (5) persons . . . ." Section 118-12 is captioned "Nonconforming buildings and uses" and provides, in part: "Any nonconforming use existing at the time of passage of these regulations may be continued . . . ." To the same effect, see General Statutes § 8-2.

The complaint alleged that the plaintiff was ready, willing, and able to comply with the orders of the fire marshal and health officer but had been prevented from doing so by the refusal of the zoning inspector to issue his approval for the repairs.

The complaint also claimed that, prior to the 1974 amendment to § 118-1, the initial definition of "family" authorized the use of the buildings in the manner initiated in 1966, 1967, and 1968. In other words, the plaintiff argued that, notwithstanding the 1974 amendment, it had obtained a valid nonconforming use of those premises, which continued in full force and effect to the present date.

The complaint contains three prayers for relief. Initially, the plaintiff claims a declaratory judgment determining whether the present use of the premises is a valid nonconforming use. Next, the plaintiff requests a mandatory injunction requiring the city of Norwalk, through its zoning enforcement officer, to issue the necessary zoning approvals to enable the plaintiff to comply with the orders of the health department and the fire marshal. Finally, the plaintiff seeks a temporary injunction against the fire marshal and health officer barring them from referring charges against the plaintiff for criminal prosecution until the present application is heard and determined.

The plaintiff's application for a temporary injunction, involving the second and third prayers for relief, was heard by the court prior to the return day of the writ, which is the first Tuesday of June, 1975. The plaintiff's application for a declaratory judgment is not being pressed and is therefore deemed to have been abandoned. The plaintiff's petition for two temporary injunctions must be denied for the reasons appearing herein.

## II

At the hearing both counsel agreed that the basic issue is whether the pre-1974 definition of "family" in the Norwalk zoning regulations permitted the plaintiff to use the homes for occupancy by a substantial number of its employee-aides, as described

above. If so, the result would be that the plaintiff obtained three valid nonconforming uses mandating zoning approval in 1975 by the zoning inspector. The plaintiff's claim lacks merit.

As seen previously, the pre-1974 definition of "family" was "any number of individuals living and cooking together as a single housekeeping unit." The word "family" is one of flexible and uncertain meaning. It must receive a reasonable and fair interpretation, however, in order that its logical purpose may be carried into effect in any particular case. *Kiska* v. *Skrensky,* 145 Conn. 28, 33.

It is true that the pre-1974 definition of "family" initially embraced "any number of individuals." Its broad prefatory clause was, however, delimited by the subsequent qualifying phrase "living and cooking together as a single housekeeping unit." The twenty-eight or thirty-one individual employees residing in the three homes certainly could not be considered a "single housekeeping unit" based on their status as outlined in Part I above.

The employees were not related to each other. They were employed on different shifts. They did not eat together at regular times so far as the evidence disclosed. Each employee apparently paid rent as an individual to the plaintiff for his or her board and room. There was no showing that the employees elected a single manager or agent who would supervise their conduct in each house by way of maintenance, social activities, or otherwise. The court agrees with the defendants that there was no proof of cohesiveness or a unitary living together which would qualify the employees for classification as a "single housekeeping unit" with respect to each of the three homes.

In *Planning & Zoning Commission* v. *Synanon Foundation, Inc.,* 153 Conn. 305, injunctive relief was granted against a defendant which occupied leased premises in alleged violation of a Westport zoning regulation limiting occupancy of dwellings in the town's AAA residential zone to "one family per lot." The premises had been occupied, in the words of the court, "by an ever-changing aggregate of individuals" ranging in number from eleven to thirty-four. Id., 309. With minor exceptions, they were unrelated to one another. The court stated (p. 309): "Such a group of individuals, who were sleeping, cooking, eating, working, and carrying on other activities at these premises, cannot be interpreted to come within the meaning of the word 'family,' either according to common usage or under the dictionary definitions . . . ." The court also commented (p. 310): "One permissible objective in carrying out this overall purpose is to control the population density in residential neighborhoods. . . . In this context a reasonable judicial construction of the word 'family' must be one which excludes the group of persons occupying the premises leased by the defendant."

In that connection § 118-2 of the Norwalk zoning regulations states that the regulations have been enacted for the purpose, inter alia, "of preventing the overcrowding of land and avoiding undue concentration of population."

It would do great violence to the stated objective of the regulations and the logical meaning of the pre-1974 definition of "family" therein to hold that the various unrelated individuals occupying the three buildings and conducting their daily lives quite independently of one another were, or are, a "single housekeeping unit." If that contention were sustained on the basis of the pre-1974 regulation, it would mean that the restrictions governing

Norwalk residential zones and the number and relationship of the occupants of single-family dwellings therein were largely exercises in hollow rhetoric. Accord, *Cassidy* v. *Triebel,* 337 Ill. App. 117, 127 (college sorority with ten students); *Schenectady* v. *Alumni Assn.,* 5 App. Div. 2d 14, 15 (N.Y.) (college fraternity with twenty-three resident members).

The social desirability and legality of a zoning ordinance restricting occupancy of residential premises by persons not related by blood, marriage, or adoption were ratified in 1974 by the United States Supreme Court in *Village of Belle Terre* v. *Boraas,* 416 U.S. 1. The court stated with approval that "[a] quiet place where yards are wide, *people few,* . . . are legitimate guidelines in a *land-use project addressed to family needs."* (Italics supplied.) Id., 9.

### III

The conclusion reached in Part II above is fortified by other restrictions which bar the plaintiff's claim for classification as a legal nonconforming use.

The plaintiff cannot demand recognition for a nonconforming use under the specific terms of § 118-12 of the Norwalk zoning regulations. Exemption under § 118-12 depends, in the first instance, on a use existing at the time of the original passage of the regulations in 1929. *Carini* v. *Zoning Board of Appeals,* 164 Conn. 169, 173; *Beckish* v. *Planning & Zoning Commission,* 162 Conn. 11, 16; *Bianco* v. *Darien,* 157 Conn. 548, 558. The use of these homes for employees occurred, at the earliest, in 1966, as revealed by the evidence. If the plaintiff is to have any standing, it must rely on the second type of nonconforming use, viz., a use allegedly legal at the time that it commenced

but made illegal by a subsequent amendment to the zoning regulations, i.e., the amendment in 1974. Note, "Zoning and the Nonconforming Use in Connecticut," 45 Conn. B.J. 427, 436. Even the second theory, however, cannot supply much comfort to the plaintiff.

For a nonconforming use to qualify for continued existence, it must meet three conditions precedent. First, it must be lawful and in existence at the time that the regulation making the use a nonconforming use was enacted. *Bianco* v. *Darien,* supra, 558–59; *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission,* 138 Conn. 434, 444; note, "The Connecticut Law of Zoning," 41 Conn. B.J. 453, 506. As stated in Part II above, the plaintiff's original use of the three homes was in violation of the pre-1974 regulation.

Second, the nonconforming use must be substantial. *Wallingford* v. *Roberts,* 145 Conn. 682, 684. The second requirement is the only one, in the opinion of the court, with which the plaintiff has complied.

Third, the use must be known as such in the neighborhood. *Melody* v. *Zoning Board of Appeals,* 158 Conn. 516, 520; *Wallingford* v. *Roberts,* supra, 684; *DeFelice* v. *Zoning Board of Appeals,* 130 Conn. 156, 161. There was no persuasive proof at the hearing that the "knowledge of the neighborhood" requirement had been satisfied by the plaintiff. The plaintiff can derive no benefit from a claimed nonconforming use where it appears that such use was surreptitiously or unobtrusively effected. 101 C.J.S. 945, Zoning, § 188.

## IV

Moreover, the plaintiff committed error, at the outset, in not litigating its claim before the Norwalk zoning board of appeals in lieu of the present

application. It is clear that under § 118-32 of the Norwalk zoning regulations the plaintiff could have filed an appeal with the zoning board of appeals from the refusal of the zoning inspector to issue the necessary approvals and, if necessary, could have thereafter appealed to this court. General Statutes §§ 8-6, 8-7, and 8-8. That is the normal procedure and should have been pursued in the instant situation.

As was stated in the leading case of *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 33: "We have frequently held that when a party has a statutory right of appeal from the decision of an administrative officer or agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." A party therefore must exhaust all his administrative remedies as a condition precedent to his appeal from the action of an administrative officer or agency. *McNish* v. *American Brass Co.,* 139 Conn. 44, 53; *Hartford* v. *Connecticut Natural Gas Corporation,* 31 Conn. Sup. 65, 71. The present action, if permitted, would circumvent the regular appellate procedure described above and would open the door to a multiplicity of actions. *Doverman* v. *Cel-Mor Investments,* 26 Conn. Sup. 334, 335. There are no compelling equities in this case warranting departure from the general rule. *Bianco* v. *Darien,* 157 Conn. 548, 554.

It is axiomatic that injunctive relief should not be granted where a plaintiff has an adequate remedy at law. The regular appellate mechanism through the zoning board of appeals exists here. The plaintiff's failure to resort to it constitutes another reason for denial of its application. *Stocker* v. *Waterbury,* 154 Conn. 446, 449; *Theurkauf* v. *Miller,* 153 Conn. 159, 162.

The plaintiff's position is further weakened by its decision to seek a mandatory injunction against the zoning inspector. Relief by way of a mandatory injunction is an extraordinary remedy and should only be granted under "compelling circumstances." *Herbert* v. *Smyth,* 155 Conn. 78, 85; s.c., 158 Conn. 615 (appeal after remand). The plaintiff has not made such a showing in the present case.

Courts should act with extreme caution where the granting of injunctive relief may result in embarrassment to, or substantial interference with, the legitimate operations of local government. *Wood* v. *Wilton,* 156 Conn. 304, 310; *Coombs* v. *Larson,* 112 Conn. 236, 247.

## V

The third prayer for relief, as previously noted, seeks a temporary injunction preventing the Norwalk fire marshal and health officer from referring any charges against the plaintiff for criminal prosecution, pending further hearings by this court. Equity will generally not enjoin enforcement under a criminal statute or ordinance. *Darien* v. *Stamford,* 135 Conn. 71, 77. There is no necessity for deviating from that general principle in the present case.

## VI

As a result of the ruling herein, it is probable that the plaintiff will be compelled to locate other living quarters for some twenty-eight or thirty-one employees. That may create difficulties and inconvenience for the plaintiff and the individuals involved. Obviously, that is a regrettable development. It must be said, however, that the plaintiff's problem is, in the main, self-created. The sub-

stantial factor in the present litigation is the plaintiff's voluntary action in operating the three houses in a manner and for purposes clearly in violation of the Norwalk zoning regulations.

## VII

The plaintiff failed to sustain its burden of proof. *Theurkauf* v. *Miller*, supra, 162.

The plaintiff's application for temporary injunction is denied in all respects.