# CONNECTICUT NATURAL GAS CORPORATION *v.* DEPARTMENT OF PUBLIC UTILITY CONTROL ET AL.*

Superior Court, Judicial District of New Britain

File No. CV-08-4018533S

Memorandum filed April 28, 2009

* An appeal to the Appellate Court was filed by the plaintiff on May 18, 2009, Docket No. AC 31076. On July 27, 2009, the appeal was withdrawn.

*Janet L. Janczewski* and *Scott J. Mueller,* for the plaintiff.

*Robert L. Marconi,* assistant attorney general, for the named defendant.

COHN, J. This is an administrative appeal by the plaintiff, the Connecticut Natural Gas Corporation, from an August 6, 2008 final decision of the defendant department of public utility control (department) ordering the plaintiff to make an interim rate reduction.

The record contains the following facts relevant to the plaintiff's appeal. On March 14, 2007, the department approved the plaintiff's then existing rates, permitting a 10.10 percent return on equity. Under General Statutes § 16-19 (g), if a public service company has six consecutive months of return on equity in excess of one percentage point above the approved return on equity, a mandatory review process is triggered.[1] The plaintiff

---

[1] General Statutes § 16-19 (g) provides: *"The department shall hold either a special public hearing* or combine an investigation with an ongoing four-year review conducted in accordance with section 16-19a or with a general rate hearing conducted in accordance with subsection (a) of this section on the need for an interim rate decrease *(1) when a public service company has, for six consecutive months, earned a return on equity which exceeds the return authorized by the department by at least one percentage point,* (2) if it finds that any change in municipal, state or federal tax law creates a significant increase in a company's rate of return, or (3) if it finds that a public service company may be collecting rates which are more than just, reasonable and adequate, as determined by the department, provided the department shall require appropriate notice of hearing to the company and its customers who would be affected by an interim rate decrease in such form as the department deems reasonable. *The company shall be required to demonstrate to the satisfaction of the department that earning such a return on equity or collecting rates which are more than just, reasonable and adequate is directly beneficial to its customers. At the completion of the proceeding, the department may order an interim rate decrease if it finds that such return on equity or rates exceeds a reasonable rate of return or is more than just, reasonable and adequate as determined by the*

filed an earnings report with the department that indicated that the plaintiff had earned a return on equity in excess of the statutory threshold of one percentage point above the rates permitted in the March 14, 2007 rate decision.

On June 17, 2008, the office of the attorney general and the office of consumer counsel both filed a motion to initiate proceedings under § 16-19 (g) to determine the need for an interim rate decrease. The office of the attorney general requested that the department conduct expedited hearings on the matter. The department, on its own motion, initiated the current proceedings to investigate the plaintiff's overearnings and also granted the office of the attorney general and the office of consumer counsel leave to intervene. On June 19, 2008, the plaintiff filed an opposition to the request by the office of the attorney general for expedited hearings because an expedited procedure would "violate [the plaintiff's] due process rights to receive adequate notice and an opportunity to be heard."

The department issued an initial schedule for the interim rate decrease proceedings on June 23, 2008. That schedule required prefiled testimony and responses to interrogatories to be filed on June 26, 2008, and set a hearing date of July 2, 2008. The following day, the plaintiff filed a motion to revise the schedule and requested at least thirty days to submit prefiled testimony and to prepare "rate case-quality projections" of its future earnings. The department revised its hearing schedule on June 26, 2008, setting the hearing for

*department. Any such interim rate decrease shall be subject to a customer surcharge if the interim rates collected by the company are less than the rates finally approved by the department or fixed at the conclusion of any appeal taken as a result of any finding by the department. Such surcharge shall be assessed against customers in such amounts and by such procedure as ordered by the department."* (Emphasis added.)

July 7, 2008, and requiring parties to submit prefiled testimony by July 14, 2008.

The hearing was held at the department's offices, as scheduled, on July 7, 2008. The plaintiff presented witnesses who were subject to cross-examination at the hearing. However, neither the office of the attorney general nor the office of consumer counsel submitted testimony. Initial briefs were due on July 23, 2008, and a draft decision was issued by the department on July 25, 2008. The department accepted written exceptions and heard oral argument on July 29, 2008. On August 6, 2008, the department issued its final decision ordering an interim rate reduction. In its decision, the department made the following findings of fact:

"1. [A return on equity] of 10.10 [percent] was found just, reasonable and adequate in the [March 14, 2007 rate decision] and none of the [p]arties to this proceeding provided evidence indicating that capital costs have changed since that time.

"2. [The plaintiff] overearned for the six-month period [November, 2007] through [April, 2008].

"3. [The plaintiff] provided evidence of [pro forma] revenues and earnings which the [d]epartment reviewed.

"4. The [plaintiff] asserts that higher gas supply costs will push future earnings lower by increasing rate base and uncollectible expense and lowering normalized use per customer.

"5. The future of gas supply costs is speculative at best.

"6. The [plaintiff] has continued to overearn even as gas supply costs have increased in recent months.

"7. The [plaintiff's] review and identification of adjustments was not comprehensive and only identified those items that would tend to reduce its earnings.

"8. The revenue reduction of $15,516,183 is the most recent weather normalized overearnings available within the [November, 2007] through [April, 2008] period and each period is a separate [twelve month] end of year period based on a rolling [twelve month] average.

"9. Using the calculation methodology employed by [the plaintiff] and based on the $15,516,183 in over-earned revenues for the [twelve month] period ending [April, 2008], yields an interim rate decrease of $0.0617 per ccf for the [twelve month] period [$15,516,183/ 251,607,570 ccf] to all firm ratepayers, including firm transportation.

"10. A cost of capital methodology was used to determine the earned [return on equity] of [the plaintiff]."

On the basis of these factual findings, the department made the following conclusions:

"The record in this proceeding provides substantial evidence upon which to conclude that overearnings existed for the time period [November, 2007] through [April, 2008]. [The plaintiff] has not met its burden of proof under [General Statutes] § 16-19 (g) by demonstrating to the satisfaction of the [d]epartment that its overearnings are directly beneficial to its customers. The [d]epartment finds that for the purposes of this proceeding, a 10.10 [percent return on equity] is just, reasonable and adequate. The [d]epartment also finds that using the recently achieved historical overearnings results as the basis for determining an appropriate interim rate decrease is more appropriate than modifying these results with speculative and one sided adjustments. As such, the [d]epartment orders [the

plaintiff] to reduce its rates on a going forward basis, and subject to surcharge, by $0.0617 per ccf, which on a prospective basis is expected to bring [the plaintiff's return on equity] to [a return on equity] level of 10.10 [percent]. This reduction in rates is in the public interest."

The department's final decision also made the following orders:

"1. [The plaintiff] shall reduce its rates by $15,516,183 with a line item credit of $0.0617 per ccf for all firm customers, including firm transportation customers, starting with the August 6, 2008 usage.

"2. No later than August 11, 2008, [the plaintiff] shall submit to the [d]epartment a sample copy of a customer's bill showing the line item credit.

"3. No later than January 1, 2009, [the plaintiff] shall file a full rate case with the [d]epartment under the uniform system of accounts. This filing shall include proposed [pro forma] adjustments for two rate [years, one] beginning [August 6, 2008, and] one subsequent to the anticipated completion of the rate case."

This appeal by the plaintiff followed. Further facts will be set out as necessary.

The department moves to dismiss this appeal on two subject matter jurisdictional grounds. First, it claims that the plaintiff failed to exhaust its administrative remedies and relies on *Johnson* v. *Statewide Grievance Committee*, 248 Conn. 87, 726 A.2d 1154 (1999), quoting *McKart* v. *United States*, 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969): "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. . . . The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." (Internal

quotation marks omitted.) *Johnson* v. *Statewide Grievance Committee*, supra, 95. Although the doctrine as advanced by the department is valid, it does not apply to this appeal.

As indicated previously, the department commenced this proceeding under § 16-19 (g), which requires the department to conduct a hearing "when a public service has, for six consecutive months, earned a return on equity which exceeds the return authorized by the department by at least one percentage point." Our Supreme Court has stated regarding § 16-19 (g): "The legislative history of § 16-19 (g) . . . indicates only that the legislature, recognizing the existence of a mechanism whereby utilities could petition for and obtain an interim rate increase [§ 16-19 (a)], sought to provide a mechanism whereby the department could order an interim rate decrease to benefit ratepayers." *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 252 Conn. 115, 128, 742 A.2d 1257 (2000).

At the conclusion of the hearing in this matter, the department ordered the plaintiff to file a complete rate case by January 1, 2009. The rate case has been filed and will be considered in the next five months. The department argues that the plaintiff may not commence an appeal from the orders set forth in the decision under § 16-19 (g), as it has not exhausted the remedy of a full appeal. Pursuant to § 16-19 (g), "[a]ny such interim rate decrease shall be subject to a customer surcharge if the interim rates collected by the company are less than the rates finally approved by the department . . . . Such surcharge shall be assessed against customers in such amounts and by such procedure as ordered by the department." General Statutes § 16-19 (g). According to the department, the plaintiff must await the outcome of the full rate hearing, at which time the correct rate will be determined and a possible surcharge ordered.

Proceeding with the appeal at this time, however, does not violate the rationale for the doctrine of exhaustion of administrative remedies; an adjudication of the appeal will not lead to "piecemeal litigation." *Office of Consumer Counsel* v. *Dept. of Public Utility Control,* supra, 252 Conn. 115, points out that the legislature delegated to the department the task of investigating whether there had been an overcharge by a utility and whether an interim rate decrease was appropriate. This is an entirely separate proceeding from the ultimate rate decision.

This is not the same as the situation posed in *Hartford* v. *Connecticut Natural Gas Corp.,* 31 Conn. Sup. 65, 321 A.2d 869 (1973). There, the court held that an interim order, issued during a rate increase proceeding, was not subject to appeal on the ground of "exhaustion." In direct contrast to the proceedings under § 16-19 (g), the court noted, at page 71: "The interim order contained nothing which could give it the status of finality."

Here, the plaintiff claims that the department wrongly imposed an expedited schedule and established an erroneous standard for a rate decrease. These issues should proceed to court review without requiring exhaustion. As the Supreme Court has pointed out, the doctrine of exhaustion should not be imposed "blindly in every case." *McKart* v. *United States,* supra, 395 U.S. 201.

The department also moves to dismiss on the ground that the plaintiff lacks the requisite aggrievement to maintain this appeal. Regarding aggrievement, the Supreme Court in *Office of Consumer Counsel* v. *Dept. of Public Utility Control,* 234 Conn. 624, 662 A.2d 1251 (1995), states: "Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. . . . It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be

aggrieved. . . . The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision." (Citations omitted; internal quotation marks omitted.) Id., 637–38.

Here, the plaintiff met the first part of the aggrievement test, as it was the respondent in the proceeding convened by the department under § 16-19 (g). Cf. id., 640; General Statutes § 16-35 (aggrieved company may file administrative appeal under General Statutes § 4-183). The department contends that the plaintiff has not been "specially and injuriously affected" by the final decision because in the pending rate proceeding it may well recoup any amounts lost under the new rate established in the final decision. On the other hand, the plaintiff points out that in the full rate proceeding, there is no guarantee that it will be made fully whole. In addition, the plaintiff has been complying with the rate established by the final decision and has not asked for a stay pending appeal. The plaintiff, therefore, is aggrieved, as it has a legally protected interest that has been adversely affected.

The plaintiff claims that the "truncated" proceedings premised on the "erroneous interpretation of the legal standard" regarding interim rate cases violated its due process rights. The plaintiff first claims that it was denied due process under the constitution of the United States. Second, the plaintiff claims that it was denied due process guaranteed by the Connecticut constitution. Third, the plaintiff claims that the denial of due

process in the proceedings conducted by the department constituted an unlawful procedure under § 4-183 (j) (3) and that the proceedings were affected by error of law under § 4-183 (j) (4). Fourth, as part of its due process claims, the plaintiff argues that the department misapplied evidentiary rules by making a finding contrary to the evidence presented with no evidence in the record to support those conclusions.

Before reaching the plaintiff's due process claims, the court will first determine whether the interim rate decrease procedures used in this case comply with § 16-19. The plaintiff claims that the proceedings were unnecessarily rushed in this case. However, the plaintiff does not identify any statutory provision that was violated by the department. Additionally, the department points out that interim rate decrease proceedings are intended to be brief because of their temporary effect. This reading is confirmed by our Supreme Court. Construing the meaning of § 16-19 (g), our Supreme Court has stated: "Finally, we cannot ignore the statutory scheme to which an interim rate decrease is, as the term suggests, temporary. An interim rate decrease hearing is to be followed by a *full* rate determination hearing. The fact that an interim rate hearing results in only temporary ratemaking until *more information is available at a subsequent full rate case hearing* indicates that the legislature vested the department with discretion to determine whether an interim rate adjustment was necessary at all." (Emphasis added.) *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, supra, 252 Conn. 124.

By enacting § 16-19 (g), the legislature deliberately created a distinct procedure to examine the need for a *temporary* rate decrease *between* full rate cases. Our Supreme Court clearly contemplated that such a proceeding would be temporary in nature and that the information available to the department at an interim

rate decrease hearing would be less than that at a full rate hearing. Additionally, § 16-19 (g) includes procedures for a rate surcharge in the event that the adjusted rates charged by the plaintiff following the interim rate decrease hearing are less than what the department authorizes at a full rate hearing. Under this construction provided by our Supreme Court, this court finds that the department's actions in holding an expedited hearing did not violate the letter or the spirit of § 16-19 (g).

Having found that the procedures in this case did not violate the statute, the court will now turn to the plaintiff's constitutional due process claims. First, the plaintiff claims that it was denied due process as guaranteed by the United States constitution, presumably under the fourteenth amendment, and the Connecticut constitution.[2] The fourteenth amendment provides in relevant part: "nor shall any State deprive any person of life, liberty or property, without due process of law . . . ." Article first, § 10, of the Connecticut constitution provides in relevant part that "every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law . . . ."

The Supreme Court of the United States has long held that corporations are considered persons under the fourteenth amendment and thus receive its protections. *First National Bank of Boston* v. *Bellotti*, 435 U.S. 765, 780 n.15, 98 S. Ct. 1407, 55 L. Ed. 2d 707 (1978) ("[i]t has been settled for almost a century that corporations are persons within the meaning of the Fourteenth Amendment"). The Supreme Court has noted that

[2] Our Supreme Court has held that the due process clauses of the federal and state constitutions have the same meaning. *Roundhouse Construction Corp.* v. *Telesco Masons Supplies Co.*, 170 Conn. 155, 159, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976). Thus, the court will review the plaintiff's due process claims under both constitutions concurrently.

"[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." (Internal quotation marks omitted.) *Mathews* v. *Eldridge,* 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), quoting *Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO* v. *McElroy,* 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey* v. *Brewer,* 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). "Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Mathews* v. *Eldridge,* supra, 334. These principles guide the court's inquiry here.

In its brief, the plaintiff briefly refers to the need for additional time to prepare its brief as support for its claim of denial of due process under the federal and state constitutions. Specifically, the plaintiff claims that under *Mathews,* one of the factors to be considered in determining the minimum amount of due process guaranteed by the federal and state constitutions is the value of additional available procedures. Before the court can make a finding regarding denial of due process under the federal and state constitutions, the court will conduct an analysis of each of the factors discussed by the *Mathews* court in light of the due process principles outlined previously.

The first factor to consider is "the private interest that will be affected by the official action . . . ." Id., 335; *Hunt* v. *Prior,* 236 Conn. 421, 439, 673 A.2d 514 (1996). The private interest affected in this case is the property loss that the plaintiff will incur through the government ordered rate reduction. Specifically, the department ordered the plaintiff to reduce its rates by $15,516,183 over a period of twelve months. Although

the relative impact of such a loss would vary depending on the organization that incurs the loss, it would be hard for this court to find this amount, on its own, to be anything but a substantial loss by the plaintiff. See *Giaimo* v. *New Haven*, 257 Conn. 481, 513, 778 A.2d 33 (2001) (finding $100,000 interest of defendant substantial).

However, this interest is not examined alone—it must be considered with the second factor, which requires the court to balance "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards . . . ." *Mathews* v. *Eldridge*, supra, 424 U.S. 335; *Hunt* v. *Prior*, supra, 236 Conn. 439–40. Here, the "risk of an erroneous deprivation" refers to the risk that the interim rate decrease ordered by the department will actually result in a loss to the plaintiff in the event that it ultimately does not earn a return on equity in excess of the statutory maximum at the end of the pro forma period. Common sense would indicate that any prospective action taken bears the risk of being erroneous.

Although the department certainly has experience setting rates in a prospective manner, and is required to do so under the statute, there always remains a risk of error, and the court cannot say that this risk is insignificant. The risk of erroneous deprivation must be considered in light of the "procedures used" by the department to reach its decision. The proceedings were initiated by the department on June 17, 2008. A hearing on the matter was held on July 7, 2008, with a draft decision issued on July 25, 2008. The department heard oral argument on July 29, 2008, and issued a final decision on August 6, 2008. During these proceedings, the department gave proper notice, permitted discovery, accepted prefiled testimony, permitted the plaintiff to

present expert testimony, and received briefs and written exceptions regarding the draft decision. The plaintiff "was not limited in any way as to the type of evidence it could present."

The "additional or substitute procedural safeguards" requested by the plaintiff involve extending the length of time of the proceedings so that the plaintiff would have the "ability to prepare detailed financial projections" that would have been "invaluable" to the plaintiff's case. To support its claims that the proceedings were truncated, the plaintiff cites several interim rate cases lasting anywhere from four to seven months from the time the department opened the case to the time it closed it. However, the plaintiff cites no precedent showing that due process requires an interim rate case to last longer than the time it did in this case.

Moreover, "additional procedural safeguards" are already in place under the statutory scheme. Although the court holds that the final decision of the department in this case meets the exhaustion and aggrievement requirements for an administrative appeal, the department correctly points out that the actions it ordered following the interim rate decrease hearing are still subject to further review. As set forth previously, one of the orders in the department's final decision required the department to initiate a full rate case no later than January 1, 2009. During this full rate case proceeding, the department will consider adjustments for the pro forma period beginning on August 6, 2008. This will permit the department to correct any erroneous adjustments to the plaintiff's rates ordered following the interim rate decrease process. The plaintiff provides no evidence to show that this additional process is insufficient to counterbalance any risks associated with the interim rate decrease procedures set forth in § 16-19 (g).

The final factor to consider under *Mathews* is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge*, supra, 424 U.S. 335; *Hunt* v. *Prior*, supra, 236 Conn. 439–40. The *Mathews* court stated that the government's interest includes the interest of the public. *Mathews* v. *Eldridge*, supra, 347–48. The department argues that "any delay in the [department's] acting represents losses to the ratepayers that will not be recovered, whereas any unjustified loss to [the plaintiff] will eventually be recovered through a rate surcharge." The department initiated these proceedings following six consecutive months of earnings in excess of the maximum return on equity. As pointed out by the department, further delay would result in further loss to ratepayers—a loss that would not be recovered.

Taking these factors together, the court finds that the procedures used in this interim rate decrease proceeding were sufficient to provide the plaintiff with the required due process under both the federal and state constitutions. Although the plaintiff has a substantial financial interest in the outcome of these proceedings, the court finds that the existence of additional corrective procedures through a full rate case hearing are sufficient to constitute sufficient due process under the circumstances of this case, especially considering the irrecoverable loss to the ratepaying public.

Second, the plaintiff claims that the proceedings in this case constituted an "unlawful procedure" under § 4-183 (j) (3) and that the proceedings were affected by "error of law" under § 4-183 (j) (4). Because the court has already found that the proceedings in this case did not violate § 16-19 (g) and did not deprive the plaintiff of due process, the court finds that these

proceedings did not constitute "unlawful procedure" and were not affected by "error of law."

The plaintiff's third claim under its due process arguments is that the department incorrectly applied the rules of evidence by rejecting the plaintiff's evidence and concluding "that its rejection of [the plaintiff's] evidence warranted the opposite conclusion," which was that the plaintiff's return on equity would increase. The court is not persuaded by this claim. First, the plaintiff has the burden of proof in an interim rate decrease hearing. Section 16-19 (g) provides in relevant part: "*The company* shall be required to demonstrate *to the satisfaction of the department* that earning such a return on equity or collecting rates which are more than just, reasonable and adequate is directly beneficial to its customers. . . ." (Emphasis added.) Referring to the evidence presented by the plaintiff, the department specifically stated in its final decision that "the [d]epartment is not persuaded that they constitute sufficiently known and measurable changes with which to modify the [plaintiff's] known and measurable historical results." In its conclusions in the final decision, the department found that "[the plaintiff] has not met its burden of proof under [General Statutes] § 16-19 (g) by demonstrating to the satisfaction of the department that its overearnings are directly beneficial to its customers." The department considered, but was not persuaded by, the plaintiff's evidence.

To the extent that the plaintiff claims that the department's findings were simply based on "its rejection of [the plaintiff's] evidence," the plaintiff's reading of the department's decision is incorrect. Although the plaintiff asserted, and the department agreed, that a prospective analysis of earnings was necessary under the department's prior interim rate cases, the record indicates that the department did conduct such an analysis.

In its final decision, the department stated that it considered all of the plaintiff's evidence but instead decided to rely on "historical overearnings results as the basis for determining an appropriate interim rate decrease rather than modifying these results with speculative and one sided adjustments." The plaintiff has provided no case law that shows that the department cannot rely on subsequent performance when conducting a prospective analysis of earnings.

The plaintiff also claims that the department changed its evidentiary standard to include a prospective analysis only after the draft decision was released. However, the record indicates that the plaintiff was "not limited in any way as to the type of evidence it could present" and that the department "fully considered all of [the plaintiff's] evidence" when making its decision. Thus, there is nothing to indicate that the plaintiff was denied due process because of any change in the type of analysis conducted by the department. If the plaintiff is claiming that the department did not actually consider the evidence that the plaintiff presented, despite the department's statement in its final decision that it did so, the plaintiff bears the burden of proving such a claim. See *Papic* v. *Burke*, 113 Conn. App. 198, 219, 965 A.2d 633 (2009) ("[a]bsent a showing by the plaintiff to suggest that the defendant did not read the administrative record prior to issuing the final order, we take the defendant at his word"). The plaintiff has presented no evidence that the department did not actually review its evidence or conduct a prospective analysis. Accordingly, having considered all of the plaintiff's due process claims, the court finds that nothing in the proceedings in this case deprived the plaintiff of due process.

The plaintiff further claims that the department erred in its factual and legal conclusions. "Within this context, judicial review of [the department's] action is governed by the [Uniform Administrative Procedure Act]; General

Statutes §§ 4-166 through 4-189; and the scope of that review, the substantial evidence rule, is restricted. . . . Substantial evidence exists if the administrative record demonstrates a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . In the specialized context of a rate case, the court may not substitute its own balance of the regulatory considerations for that of the agency, and must assure itself that the [department] has given reasoned consideration to the factors expressed in [the relevant statute]. . . .

"This broad grant of regulatory authority carries with it the necessarily equally broad discretion, to be exercised within legal limits; see General Statutes § 4-183 (g); to take into account such varying factors as economics, public policies, accounting principles, fairness to the parties, and the context and intent of any prior agreements entered into by the utility, and to balance those factors by a process of reasoned decision-making." (Citation omitted; internal quotation marks omitted). *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 279 Conn. 584, 592–94, 905 A.2d 1 (2006); see also *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 833, 955 A.2d 15 (2008) (approving agency decision reasonably supported by evidence).

The plaintiff claims that the department made factual errors in concluding that it had exceeded its return on equity. First, it points out that a $2.4 million income tax saving was nonrecurring. The department concluded that this one time reduction did not mean that

the plaintiff would have a future decrease in earnings. Second, the plaintiff relies on the fact that gas prices will rise in the future months, also affecting its rate of return. The department concluded that gas prices are speculative for the reasonable future. It also found that during the six month period of higher than allowed return, the plaintiff had also faced increasing gas prices. These findings were made on the department's review of the record and do not violate the substantial evidence rule as stated previously.

The plaintiff also contends that the department should have implemented its alternative rate proposals rather than order an interim rate. This decision was one for the department to make, however. See *Office of Consumer Counsel* v. *Dept. of Public Utility Control,* supra, 252 Conn. 124: "These factors lead to the conclusion that the interim rate decrease authority is discretionary." The court declines to reverse the conclusion reached by the department that an interim rate reduction, and not the alternatives suggested by the plaintiff, is the appropriate path to follow.

The final argument raised by the plaintiff is that the March 14, 2007 agreement with the department allowed for the plaintiff to have a return on equity of 10.1 percent and that the final decision interferes with the 2007 settlement. The record shows, however, that the plaintiff never made this claim at the hearing before the department. Rather, it claimed that on the basis of its analysis of its prospective earnings, the department should not order a reduction in its rates. In any event, a final decision under § 16-19 (g) would take precedence over the 2007 agreement. See *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 264–65, 579 A.2d 505 (1990); see also *Broadnax* v. *New Haven,* 284 Conn. 237, 249–50, 932 A.2d 1063 (2007).

For the foregoing reasons, the appeal is dismissed, without costs to either party.