562 So.2d 1212 (1990)
The CITY OF MOUND BAYOU, Mississippi and Alfred Thompson, Individually, and as a Police Officer of the City of Mound Bayou, Mississippi
v.
Eddie JOHNSON, Jr.
No. 07-IA-59507.
Supreme Court of Mississippi.
April 18, 1990.
Rehearing Denied May 23, 1990.
Lindsey C. Meador, Jacobs Eddins Povall Meador & Crump, Cleveland, for appellants.
John L. Hatcher, Cleveland, for appellee.
EN BANC.
*1213 ROBERTSON, Justice, for the Court:

I.
This case presents important questions concerning the period of time within which one charging police brutality must bring his action against the offending officer and the municipality whom he serves. Related are the questions of the limitations period governing actions for false arrest and malicious prosecution against a municipality.

II.
We begin with a brief chronology of the events necessary to an understanding of the issues tendered on this appeal.
August 6, 1983 Plaintiff/Appellee, Eddie Johnson, Jr. arrested
Johnson Convicted in Mound Bayou Municipal Court on Charges of Resisting Arrest and Disturbing the Peace
January 31, 1984 County Court Verdict overturning Municipal Court and acquitting Johnson
August 6, 1984 Expiration of one year period from date of arrest and assault and battery
January 31, 1985 Expiration of one year period from date of Johnson's acquittal in County Court
June 7, 1985 Plaintiff/Appellee files complaint in Circuit Court of Bolivar County alleging police brutality, false arrest and malicious prosecution
July 2, 1985 Removal to U.S. District Court
July 9, 1985 Defendants/Appellants file Answer and Defenses in U.S. District Court
July 23, 1986 U.S. District Court dismisses Count III (Section 1983 claim) with prejudice, remands Counts I and II (state law claims) to Circuit Court of Bolivar County
July 7, 1988 Circuit Court Order Overruling Defendant's Motion to Dismiss, Certifying Question, and Staying Further Proceedings
September 7, 1988 Interlocutory Appeal granted by Supreme Court of Mississippi
Fleshing out the facts, we find that on June 7, 1985, Eddie Johnson, Jr. commenced the present civil action by filing his complaint in the Circuit Court of the Second Judicial District of Bolivar County, Mississippi. Johnson named as Defendants the City of Mound Bayou, Mississippi, a municipal corporation, and Alfred Thompson, individually, and as a police officer of the City of Mound Bayou. By reason of the present procedural posture of the case, we take the allegations of Johnson's complaint as true. Cain v. McKinnon, 552 So.2d 91 (Miss. 1989); Wilkinson v. Mercantile National Bank, 529 So.2d 616, 618 (Miss. 1988).
Johnson alleges that on Saturday morning, August 6, 1983, at approximately 3:00 a.m. he arrived at the home of his parents in Mound Bayou at which time he was unlawfully arrested by Officer Alfred Thompson who was at the time acting in his capacity as a police officer of the City of Mound Bayou. The complaint continues:
After falsely placing the Plaintiff under arrest, Defendant Alfred Thompson proceeded to wantonly and negligently beat upon the Plaintiff with his hands, fists, pistol and blackjack far more than necessary to take the Plaintiff into custody and was carried out in such negligent fashion as to demonstrate a lack of regard of the right of the Plaintiff to be free from unnecessary and unlawful bodily harm or the threat thereof. Such actions were without the due care and diligence which a reasonable and prudent individual, particularly a police officer, should have displayed under the same or similar circumstances. Defendant Alfred Thompson inflicted serious bodily injury upon Plaintiff, causing severe cuts, abrasions, bruises and sprains to left ear, upper lip, top of the head, right ankle sprain, left wrist and hand, right shoulder, and the loss of three teeth and other parts of the body of the Plaintiff, all of which caused severe and excruciating pain to the Plaintiff for a considerable period of time thereafter, all of which was done with a reckless and wanton disregard of and callous indifference of the rights of the Plaintiff and for the *1214 purpose of inflicting serious bodily injury upon him, all of which was totally unnecessary for the purpose of arrest or apprehending the said Plaintiff.
Johnson's complaint continues:
After the beating of the Plaintiff as aforesaid, Defendant Alfred Thompson placed handcuffs upon the Plaintiff in a rough and brutal manner and threw the Plaintiff inside his police vehicle, which proceeded to the Police Station in Mound Bayou, Mississippi. While in route and at the City Hall in Mound Bayou, Mississippi, Defendant Alfred Thompson again administered acts of brutality upon the Plaintiff while handcuffed and powerless to defend himself. Defendant Alfred Thompson apparently realizing at last what he had done to the Plaintiff, then proceeded to charge the Plaintiff with resisting arrest, hoping in some way that this would seem a justification for his conduct. Defendant Alfred Thompson further falsely charged Plaintiff with disturbing the peace in order to justify the false arrest of Plaintiff. The charges of resisting arrest and disturbing the peace were clearly without probable cause and were made against the Plaintiff out of anger and malice toward him, and were known by Defendant Alfred Thompson to be false.
In due course, Johnson was brought to trial in the Municipal Court of the City of Mound Bayou, on the charges of resisting arrest and disturbing the peace, whereupon Johnson was found guilty. Johnson subsequently perfected an appeal to the County Court of the Second Judicial District of Bolivar County, Mississippi, where, after trial by jury, the County Court on January 31, 1984, reversed each conviction, ordered the charges dismissed and Johnson finally discharged.
Johnson's complaint presents three claims. First, he asserts an action of assault and battery against Officer Thompson and the City of Mound Bayou. Second, he charges Thompson with false arrest, and Thompson and the City with malicious prosecution. Third, invoking the concurrent jurisdiction of this Court, Johnson states a claim for violation of his civil rights under 42 U.S.C. § 1983.
In lieu of immediate answer, Defendants Thompson and the City of Mound Bayou seized upon the fact that Johnson had asserted a federal claim under Section 1983 and petitioned the United States District Court for the Northern District of Mississippi that the action be removed to that court. On July 23, 1986, the United States District Court held the federal claim time barred and dismissed that claim "with prejudice".[1] The Court ordered the remainder of the action, Johnson's claims for assault and battery, false arrest and malicious prosecution, remanded to the Circuit Court of Bolivar County. The City of Mound Bayou and Thompson then answered, asserting numerous defenses, including sovereign and qualified official immunity.[2]
Of concern today is the defense that Johnson's claims are barred by Mississippi's one-year statute of limitations. Miss. Code Ann. § 15-1-35 (1972). When the matter came on for hearing before the Circuit Court on Defendants' motion to dismiss by reason of the statute of limitations, that Court denied the motion, holding that *1215 it was bound to do so under the authority of State For the Use of Smith v. Smith, 156 Miss. 288, 125 So. 825 (1930), inter alia, but in doing so, certified the question to this Court via interlocutory appeal, see Rule 5(a), Miss.Sup.Ct. Rules, expressing its belief
that a substantial basis exists for a difference of opinion on the question of law as to which appellate resolution may materially advance a termination of the litigation herein, avoid exceptional expense to the parties herein, and resolve an issue of general importance in the administration of justice.
Specifically this Court feels that the Mississippi Supreme Court may wish to revisit and reconsider the rationale of State v. Smith, 156 Miss. 288, 125 So. 825 (1930) wherein the Supreme Court held that intentional torts committed by police officers were controlled by the six year general statute of limitations, rather than the one year limitation. Further, the Court is of the opinion that the Supreme Court may consider that State v. Smith, supra, has never been interpreted to apply the six year statute of limitations to a municipal, corporate defendant.
The Circuit Court's order of July 6, 1988, then stayed all proceedings in this action pending the interlocutory appeal.
This Court has heretofore held that substantial questions regarding whether an action should be dismissed as time barred by reason of a statute of limitations often meet the criteria of our Rule 5(a), making them appropriate for consideration via interlocutory appeal. American Electric v. Singarayar, 530 So.2d 1319, 1323 (Miss. 1988); Kilgore v. Barnes, 490 So.2d 895, 896 (Miss. 1986); Cf. Missouri Pacific Railroad Co. v. Tircuit, 554 So.2d 878 (Miss. 1989). By order entered September 7, 1988, this Court granted Defendants' petition for interlocutory appeal to consider the important limitations questions presented.

III.
Count I of Johnson's complaint states a claim generically akin to a common law assault and battery. See Williams v. Clark, 236 Miss. 423, 427, 110 So.2d 365, 367 (1959); Morgan v. Loyacomo, 190 Miss. 656, 663, 1 So.2d 510, 511 (1941); see also State For the Use of Smith v. Smith, 156 Miss. 288, 292, 125 So. 825, 826 (1930). If defendants were private parties, we are confident all would agree that Johnson's action is barred by Miss. Code Ann. § 15-1-35 (Supp. 1989), which in relevant part reads:
All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, ... shall be commenced within one year next after the cause of such action accrued, and not thereafter.
It is true that there is a certain amount of negligence language trailing along in Johnson's complaint. This is of no moment, as
[t]here can be no escape from the bar of the statute of limitations applicable to intentional torts by the mere refusal to style the cause brought in a recognized statutory category and thereby circumvent prohibition of the statute.
Dennis v. Travelers Insurance Co., 234 So.2d 624, 626 (Miss. 1970).
In fact, Alfred Thompson was not a private citizen on August 6, 1983, but was acting as a police officer of the City of Mound Bayou, and the Circuit Court felt that our case law thus removed the action from the one-year limitation for assault and battery actions, citing State For the Use of Smith v. Smith, 156 Miss. 288, 125 So. 825 (1930). Smith considered the predecessor of today's Section 15-1-35. Plaintiff had sued a sheriff and the surety on his official bond, charging that a deputy, while in the course of arresting plaintiff, had shot plaintiff in the leg, causing the leg to be amputated. The Court held the action without the one-year limitations statute. Alexander v. Carsley, 199 Miss. 881, 25 So.2d 709 (1946) is to like effect.
Upon reading Smith we are not at all sure it even addresses the question what limitations period governs the suit against the sheriff. The opinion's focus is upon the suit on the bond, reciting
The appellant's contention is that the statute does not apply to suits on an *1216 official bond for malfeasance in office, and this is the sole question argued in the briefs of counsel.

Smith, 156 Miss. at 292, 125 So. at 826. [Emphasis supplied] On the other hand, the action in Smith was "against Arthur J. Smith, a sheriff, and the surety on his official bond." The trial court had dismissed the entire action, on grounds it had been brought more than a year after it accrued. This Court reversed and remanded, which could only have had the effect of reinstating the action against the sheriff as well as his surety. Besides, the Court below is not the first to think Smith holds an action against a law enforcement officer not subject to the one year statute of limitations. See Morrell v. City of Picayune, 690 F.2d 469, 470 (5th Cir.1982); Shaw v. McCorkle, 537 F.2d 1289, 1295 (5th Cir.1976); Simons v. City of Columbus, 593 F. Supp. 876, 878 (N.D.Miss. 1984); and Mathis v. Indemnity Insurance Company of North America, 588 F. Supp. 489, 493 (S.D.Miss. 1983); Harvey v. Dunaway, 461 F. Supp. 758, 759-60 (N.D.Miss. 1978).
Treating Smith as addressing today's issue, we find a fundamental confusion in the Court's reasoning. Smith states:
The declaration sets forth not a mere assault and battery, or maiming, but a breach of the sheriff's official duty, the assault and battery or maiming, being the particular breach thereof; and the cause of action is this breach of the deputy sheriff's official duties. The statute, therefore, does not apply.
156 Miss. at 292, 125 So. at 826. Smith appears to proceed on the assumption that the source of "the sheriff's official duty" is his official bond and the statute requiring such as an incident of his office. This is simply wrong.
In the course of an arrest and taking into custody, the duties of a law enforcement officer toward a suspect arise and have their existence under other provisions of the positive law. See, e.g., Holland v. Martin, 214 Miss. 1, 9, 58 So.2d 62, 63 (1952); Moore v. Foster, 182 Miss. 15, 19, 180 So. 73 (1938); State To the Use of Johnson v. Cunningham, 107 Miss. 140, 149, 65 So. 115, 117 (1914). The condition of the official bond is that the officer will perform faithfully those duties. The bond serves to secure to the public rights against the officer, rights pre-existing the bond and wholly independent of it. The bond assures the existence of a limited fund out of which recovery can be had if a citizen shows that the officer has otherwise breached his duty, see Western Surety Co. v. State For the Use of Seals, 330 So.2d 573, 576 (Miss. 1976), but the liability of the surety is wholly derivative from and a function of the defaults of the officer who is principal on the bond and whose conduct is measured by other law. That law proscribes an officer's use of excessive force and provides a civil remedy. On principle, Johnson's action against Officer Thompson is subject to the one year statute of limitations the same as any other action for assault and battery.
We consider it settled beyond dispute that the assault and battery limitations statute is available defensively to private parties sought to be held via respondeat superior, see Sears, Roebuck & Co. v. Ingram, 206 So.2d 204, 205-06 (Miss. 1968); Cf. Illinois Central Railroad v. Wales, 177 Miss. 875, 171 So. 536 (1937). A municipal corporation such as the City of Mound Bayou is not circumstanced so differently that it ought be deprived of the benefit of a like limitation where sued for the assault and battery of one of its police officers. The bar that protects Thompson protects the City as well.
Notwithstanding, Johnson argues strenuously that there are strong policy reasons why we should not hold actions such as this to the one-year limitations statute. Upon examination, those reasons have only to do with the concededly legitimate policy reasons for holding public officers liable under limited circumstances for injuries they may cause citizens. See, e.g., McFadden v. State of Mississippi, 542 So.2d 871, 879-81 (Miss. 1989); Grantham v. Mississippi Dept. of Corrections, 522 So.2d 219, 223-26 (Miss. 1988). Those reasons have nothing to do with the limitations question presented today. Indeed, it would seem intuitively plausible that the limitations period *1217 within which suits may be brought against public officials should be relatively short, to the end that the officials may be about the business of performing their official duties and serving the public without the burden of worries of whether they will be sued for deeds long past.
All of this we consider against the backdrop of the legislative declaration that actions for assault and battery must be brought within one year or be forever time barred. We accept this statute and enforce its hard-edged rule of law and, as well, the public policy expression embedded in it. While the law well recognizes and declares legally enforceable a person's moral right to redress on the occasion of a physical assault, there is an equally strong policy that such claims can and should be asserted promptly. There is no danger of a would-be plaintiff being unaware that his claim has accrued. He will certainly know if he has been beaten. Moreover, cases of this sort frequently involve substantial disputes of fact. Because memories dim or become exaggerated with time, particularly when colored by passion or prejudice, common sense suggests assault and battery actions be brought and tried promptly. In any event, the public policy considerations implicit in Section 15-1-35 apply where the offender is a police officer and the corporation sought to be held is a municipal corporation, as well as in the case of private parties. In today's limited limitations context, we see nothing in the action Johnson asserts that suggests he ought have a longer time to sue than one charging a common law assault and battery. To the extent Smith and Alexander hold to the contrary, they stand modified.[3]
These things said, we find Johnson's action against Thompson accrued on August 6, 1983, the date he alleges Thompson assaulted him. That action is subject to Section 15-1-35 which required it be commenced, if at all, "within one year next after the cause of such action accrued, and not thereafter." Johnson did not file his suit before August 6, 1984, nor did he file it until June 7, 1985  some 305 days late! The Circuit Court erred when it denied Defendants' motion to dismiss Count I of Johnson's complaint.

IV.
We next turn to the question whether the one-year limitations period prescribed in Section 15-1-35 applies as well to Johnson's action against Thompson for false arrest and against Mound Bayou and Thompson for malicious prosecution. Again we recall that the torts specifically named are (1) assault, (2) assault and battery, (3) maiming, (4) false imprisonment, (5) malicious arrest, (6) menace, (7) libel, and (8) all actions for slanderous words, and the question is whether we may find embedded within the statute's text the torts of false arrest and malicious prosecution.
Thompson's action for false arrest accrued the day it occurred  August 6, 1983. His action for malicious prosecution did not accrue until January 31, 1984, the date of the two judgments in the County Court dismissing Mound Bayou's two misdemeanor prosecutions. See Parker v. Mississippi Game and Fish Commission, 555 So.2d 725, 728 (Miss. 1989); Pugh v. Easterling, 367 So.2d 935, 937 (Miss. 1979); Grenada Bank v. Petty, 174 Miss. 415, 425, 164 So. 316, 318 (1935). Because Johnson's present civil action was not filed until June 7, 1985, he is still 127 days late if the one-year period of limitations applies.
Section 15-1-35 enumerates eight tort labels, among them "malicious arrest". Neither false arrest nor malicious prosecution is enumerated as such. Our cases suggest the statute's force is not limited to the eight torts labeled therein. Bush v. City of Laurel, 234 Miss. 93, 103, 105 So.2d 562, 566 (1958) says the statute includes torts "of the type enumerated" in the statute. *1218 Dennis v. Travelers Insurance Co., 234 So.2d 624, 626 (Miss. 1970) is more expansive, holding that the statute "provides an inclusive listing of the recognized intentional torts." Southern Land & Resources Co., Inc. v. Dobbs, 467 So.2d 652, 654 (Miss. 1985) repeats the point. If this be so, the proscription of the statute necessarily extends beyond the tort labels specifically appearing, for but a moment's reflection calls to mind any number of intentional tort actions recognized in Mississippi law which are not enumerated as such in Section 15-1-35. Consider, for example, abuse of process, Mangum v. Jones, 236 So.2d 741, 743 (Miss. 1970), and invasion of privacy,[4]Deaton v. Delta Democrat Publishing Co., 326 So.2d 471, 473 (Miss. 1976); Cf. In re Brown, 478 So.2d 1033, 1039-40 (Miss. 1985). The better view is that statute extends to all actions substantially like unto the enumerated eight and for which no specific statute has been provided.
All of this advances the ball but does not wholly overcome the fact that Section 15-1-35 does not employ either the term "false arrest" or the term "malicious prosecution," although it is difficult to resist the intuitive impulse that "malicious arrest" includes them both.
The false arrest issue is easy. We perceive no difference between the tort of malicious arrest, as enumerated in the statute, and false arrest as we know it today. False arrest is an intentional tort, arising when one causes another to be arrested falsely, unlawfully, maliciously and without probable cause. It is similar to false imprisonment, a tort appearing by name in Section 15-1-35. Claims of false arrest frequently ripen into false imprisonment and plaintiffs often bring the two together. See, e.g., Godines v. First Guaranty Savings & Loan Association, 525 So.2d 1321, 1322 (Miss. 1988); Fuller v. Sloan, 230 So.2d 574, 575 (Miss. 1970). There is a sense in which false arrest may appear a "lesser included offense" to false imprisonment. See Godines, supra, 525 So.2d at 1324 (causing false imprisonment through false arrest), quoted in Sunshine Jr. Food Stores, Inc. v. Aultman, 546 So.2d 659, 662 (Miss. 1989). If false imprisonment is subject to a one year limitations period, it makes no sense that false arrest not be similarly proscribed.
Parker v. Mississippi Game and Fish Commission, 555 So.2d 725 (Miss. 1989) implicitly recognizes an action for false arrest subject to Section 15-1-35's one year time bar. In King v. Otasco, Inc., 861 F.2d 438, 442 (5th Cir.1988), the Court of Appeals "guessed" we would hold an action for the intentional tort of false arrest (among others) governed by the one year statute. Today we squarely so hold.
We have on several occasions placed malicious prosecution within the generic category of intentional tort, albeit in other contexts, Royal Oil Co., Inc. v. Wells, 500 So.2d 439, 442 (Miss. 1986); Allstate Insurance Co. v. Moulton, 464 So.2d 507, 510 (Miss. 1985), although we have never directly considered today's point. Kitchens v. Barlow, 250 Miss. 121, 164 So.2d 745 (1964) implicitly recognizes that the one year statute governs actions for malicious prosecution, but in the end pretermits the point because "the record before us does not show the date of the filing of the plaintiff's declaration." 250 Miss. at 138, 164 So.2d at 752.
The elements of the tort of malicious prosecution are familiar and well settled. See, e.g., Parker v. Mississippi Game and Fish Commission, supra; Royal Oil Co., Inc. v. Wells, 500 So.2d at 442; Owens v. Kroger Co., 430 So.2d 843, 846 (Miss. 1983). The essence of the action is the defendant's malicious institution of criminal proceedings against plaintiff, absent probable cause therefor. Such an action is quite like unto at least three torts expressly enumerated in the statute: false imprisonment, see Thornhill v. Wilson, 504 So.2d 1205, 1208 (Miss. 1987), menace, Dennis v. Travelers Insurance Co., 234 So.2d at 626, and malicious arrest. If these three are subject to *1219 a one year limitations bar, what reason on principle may be offered for excluding malicious prosecution?
Inclusion of the phrase "malicious arrest" in Section 15-1-35 takes on particular importance. In a sense that phrase as a label for a type of tort action that has fallen into disuse. We now use "false arrest". It is helpful to recall that malicious arrest imports a tort quite similar to malicious prosecution, the only difference of consequence being that the tort of malicious arrest is complete once the plaintiff is legally under arrest, while malicious prosecution does not technically require an arrest, only a prosecution of the plaintiff.[5]
What is important is that the tort of malicious prosecution has evolved to the point where full prosecution of the plaintiff through trial is no longer required. Plaintiff must prove only "institution of a criminal proceeding" by or at the insistence of the defendant. Royal Oil Co., Inc. v. Wells, 500 So.2d at 442; Woolfolk v. Tucker, 485 So.2d 1039, 1042-43 (Miss. 1986); Owens v. Kroger Co., 430 So.2d at 846; State for Use and Benefit of Foster v. Turner, 319 So.2d 233, 235 (Miss. 1975). In practical effect, criminal proceedings are instituted when a person is formally arrested and charged with an offense. Cf. Miss. Code Ann. § 99-1-7 (1972); Jimpson v. State, 532 So.2d 985, 988 (Miss. 1988); Page v. State, 495 So.2d 436, 440 and n. 5 (Miss. 1986). Among our reports are any number of cases where viable action for malicious prosecution was recognized, although the defendant did little to the plaintiff beyond having him or her arrested. See, e.g., Wutzke v. Wayne Lee's Grocery and Market, Inc., 199 So.2d 438, 440 (Miss. 1967); Fowler v. King, 254 Miss. 61, 63-65, 179 So.2d 800, 801-02 (1965); Gandy v. Palmer, 251 Miss. 398, 405-08, 169 So.2d 819, 821-22 (1964); Pulliam v. Ott, 246 Miss. 739, 743-44, 150 So.2d 143, 145 (1963); Harvill v. Tabor, 240 Miss. 750, 753, 128 So.2d 863, 864 (1961).
We perceive no reason on principle why a different  and longer  period of limitations should apply to an action for malicious prosecution than is enforced in the case of the closely related actions of false imprisonment, malicious arrest or menace. We note the prescience of the United States District Court for the Northern District of Mississippi which in Childers v. Beaver Dam Plantation, Inc., 360 F. Supp. 331, 333 (N.D.Miss. 1973) and Harvey v. Dunaway, 461 F. Supp. 758, 759 (N.D.Miss. 1978), held it was "Erie[6] bound" to enforce the one-year statute to an action for malicious prosecution.[7]
We hold that a civil action for false arrest or for malicious prosecution is subject to the limitations proscription of Section 15-1-35. From this it is but a short step to hold that the Circuit Court erred when it denied Defendants' motion to dismiss Count II of Johnson's complaint.

V.
Count III of Johnson's complaint is his claim for violation of his federally secured civil rights brought under 42 U.S.C. § 1983. The courts of this state have subject matter jurisdiction of such claims, concurrent with the courts of the United States. Burrell v. Mississippi State Tax Commission, 536 So.2d 848, 863-64 (Miss. 1988); Marx v. Truck Renting & Leasing Association, Inc., 520 So.2d 1333, 1346 (Miss. 1987). When adjudging such claims, however, we respect and enforce the statute of limitations prescribed by federal law which in turn directs reference to state limitations law. 42 U.S.C. § 1988. In Owens v. Okure, 488 U.S. 235, 109 S.Ct. 573, *1220 102 L.Ed.2d 594 (1989), the Supreme Court held that courts considering Section 1983 claims should borrow from the state whose period of limitations would otherwise apply "the general residual statute for personal injury actions." 109 S.Ct. at 582, 102 L.Ed.2d at 606. In this state, that statute would be Miss.Code § 15-1-49 (1972) which at the time provided a six-year period of limitations long held applicable to general non-intentional tort actions.[8] The earliest Johnson's actions could have accrued was August 6, 1983, the date of the incident at his parent's home. Under federal law, as declared in Owens, his action would ordinarily have been timely.
A funny thing happened on the way to the courthouse. After Defendants had removed the action to the United States District Court for the Northern District of Mississippi, the United States Court of Appeals for the Fifth Circuit decided Gates v. Spinks, 771 F.2d 916 (5th Cir.1985). Gates held Section 1983 actions subject to the one year statute of limitations considered in Parts III and IV above. On the authority of Gates, the District Court then held that Johnson's Section 1983 claim was barred by the one-year statute of limitations. Indeed, as indicated above, Johnson acquiesced in the point.[9] Johnson took no appeal from the dismissal of his Section 1983 claim.
Be all of this as it may, the U.S. District Court's order of dismissal of Johnson's Section 1983 claim has long since become final and we inquire not into the merits of whether he may have successfully appealed or otherwise obtained relief. See Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398-99, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103, 108 (1981); Cunningham v. Mitchell, 535 So.2d 589, 591-92 (Miss. 1988). To be sure, the present action is a continuation of the same action in which the District Court has dismissed Johnson's Section 1983 claim. Johnson has not here questioned the finality of that order nor suggested that we have authority to reopen the question and, accordingly, we express no opinion on the point.[10]
The bottom line is that Johnson here affords us no grounds for treating the dismissal of his Section 1983 claim as other than final.

VI.
In summary, we hold Johnson's claim for assault and battery, asserted in Count I of his complaint, is barred by Section 15-1-35's one-year statute of limitations and, in connection therewith, State For the Use of Smith v. Smith, 156 Miss. 288, 125 So. 825 (1930) and progeny stand modified to the extent articulated herein above. We further hold an action for false arrest or malicious prosecution such as those asserted by Johnson in Count II of his complaint is subject to Section 15-1-35's one-year period of limitations and is also barred. Johnson has presented no arguments or authority why we should reopen Count III of his complaint wherein he asserted a claim under 42 U.S.C. § 1983.
Accordingly, the order of the Circuit Court entered July 7, 1988, is vacated, reversed and held for naught and judgment is rendered here finally dismissing Johnson's complaint against Defendants Thompson and the City of Mound Bayou.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., and PRATHER, ANDERSON and PITTMAN, JJ., concur.
HAWKINS, P.J., dissents by written opinion joined by DAN M. LEE, P.J.
*1221 SULLIVAN, J., dissents by separate written opinion joined in part by BLASS, J.
BLASS, J., dissents by separate written opinion.
HAWKINS, Presiding Justice, Dissenting:
I respectfully dissent.
This is an interlocutory appeal from a circuit court order overruling a motion to dismiss a cause of action because it was barred by the statute of limitations.
In the absence of a Legislative Act granting a right of interlocutory appeal, in my view this Court has no lawful authority to hear any such appeal.
For the reasons set forth, the decisions of this Court stating that the Mississippi Supreme Court has such authority should be overruled, and Rule 5 of the Mississippi Supreme Court Rules acknowledged ineffective.
I would remand this case to the circuit court for trial on the merits.

HISTORY
One of the methods whereby the authors of the United States Constitution expected to keep the judicial power under proper check was by vesting in Congress control of appellate jurisdiction of the Supreme Court. McDowell, Curbing the Courts, (Louisiana State University Press, 1988), pp. 121-130.
As a delegate to the Virginia Ratifying Convention, John Marshall explained, "Congress is empowered to make exceptions to the appellate jurisdiction, as to law and fact, of the Supreme Court. These exceptions go as far as the legislature may think proper for the interest and the liberty of the people." Ibid, at 122.
In the concluding sentence to Art. 3, Section 2, Clause 2, the United States Constitution provides:
In all the other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.
In Wiscart v. D'Auchy, 3 U.S. (3 Dall.) 321, 327, 1 L.Ed. 619 (1796), Chief Justice Ellsworth acknowledged Congress had exclusive control of what cases could and could not be heard on appeal:
In all other cases [other than those of original jurisdiction], only an appellate jurisdiction is given to the court; and even the appellate jurisdiction is, likewise, qualified; inasmuch as it is given "with such exceptions, and under such regulations, as the Congress shall make." Here then, is the ground, and the only ground, on which we can sustain an appeal. If Congress has provided no rule to regulate our proceedings, we cannot exercise an appellate jurisdiction; and if the rule is provided, we cannot depart from it. [Emphasis added]

Also, Sheldon v. Sill, 49 U.S. (8 How.) 441, 12 L.Ed. 1147 (1850); The "Francis Wright", 105 U.S. 381, 15 Otto. 381, 26 L.Ed. 1100 (1882); Ex parte Yerger, 75 U.S. 85, 8 Wall. 85, 19 L.Ed. 332 (1869); St. Louis, Iron Mountain and Southern Railway v. Taylor, 28 S.Ct. 616, 210 U.S. 281, 52 L.Ed. 1061 (1908).
This principle that the right of appeal is purely a statutory right was not, and is not, confined to the United States Constitution. Virtually every state has adopted this principle. The mere fact that a state constitution creates and vests in a supreme court appellate jurisdiction does not operate to create any right of appeal.
First, however, Mississippi.
Steele v. Shirley, 9 S. & M. 382 (1848), held that no appeal exists in the absence of a law prescribing its terms and mode.
Dismukes v. Stokes, 41 Miss. 430, 432-433 (1867), recognized the Constitution conferred upon the Mississippi Supreme Court "such jurisdiction as properly belongs to a Court of Errors and Appeals." This did no more than establish a court of appellate jurisdiction, however. As to what matters could be brought before the Supreme Court, this Court held that in the absence of instances where "specific rights are secured to a party in the constitution, with a *1222 remedy indicated for their protection," then "the power is conceded to the legislature to prescribe the forms of actions and the modes of proceeding in courts, and to limit the cases and the extent to which certain remedies may be pursued." This is based upon "general considerations of public policy, which, for the most part, must be determined by the legislature." [Emphasis added]
Then in Bridges v. Board of Supervisors of Clay County, 57 Miss. 252, 254 (1879), this Court held:
It has been settled from an early day in this State that appeals are not a matter of right, and are allowable only in cases provided for by statute; and then only on the terms prescribed by the statute; that these terms must be strictly complied with, and are conditions precedent to the jurisdiction of the appellate court. Parker v. Willis, 27 Miss. 766; Hardaway v. Biles, 1 S. & M. 657; Porter v. Grisham, 3 How. 75; Carmichael v. Trustees, 3 How. 84; Pickett v. Pickett, 1 How. 267.
State v. Poplarville Sawmill Co., 119 Miss. 432, 441, 81 So. 124, 127 (1919), held, "Appeals are regulated by statute, and only lie in cases provided by statute." And, in Union Motor Car Co. v. Cartledge, 133 Miss. 318, 330-331, 97 So. 801, 804 (1923), we held:
In order to obtain the appeal he must comply with the statute, and consent cannot confer jurisdiction in this court to entertain appeals when statutory proceedings are not followed. Section 61, Code of 1906 (Section 37, Hemingway's Code).
In sustaining a motion to dismiss an appeal in Jones v. Cashin, 133 Miss. 585, 590, 98 So. 98, 99 (1923), we held: "An appeal is not a matter of right, and only lies when authorized by law. [citations omitted] No statute authorizing this appeal has been called to our attention... ."
Thereafter, in McClanahan, et al. v. O'Donnell, et al., 148 Miss. 478, 490, 114 So. 336, 338 (1927), we held:
An appeal is solely a statutory right, and, in the absence of fraud or fault on the part of the opposing litigant who has secured a judgment or decree in his favor, the party desiring to appeal therefrom must pursue the method and remedy provided by statute.
In Shapleigh Hardware Co., Inc. v. Brumfield, et al., 159 Miss. 175, 179, 130 So. 98, 98-99 (1930), we reiterated:
The Constitution does not provide the procedure for removing cases from a trial court to the supreme court, leaving the procedure therefor to be regulated wholly by the legislature from which it follows that a case can be removed from a trial court to the Supreme Court for review only in the manner provided by a statute. Dismukes v. Stokes, 41 Miss. 430; 3 C.J. 299.
In Worley v. Pappas, 161 Miss. 330, 332, 135 So. 348, 349 (1931), Justice Griffith for this Court again noted, "it has been settled from an early day in this state that appeals are not a matter of right, and are allowable only in cases provided for by statute."
In Jackson County v. Meaut, 185 Miss. 235, 238, 189 So. 819, 820 (1939), we held:
A person whose rights are involved in controversy is entitled to access to the proper court of original jurisdiction, to a judgment settling his rights, and for the processes of that court to enforce the rights so adjudicated. But a person is not entitled to appeal from the judgment of a court of original jurisdiction to the Supreme Court of the state, or to an appellate court, without complying with the conditions authorizing an appeal to be made. Woods v. Davidson, 57 Miss. 206.
In Craig v. Barber Bros. Contracting Co., 190 Miss. 182, 187, 199 So. 270, 272 (1941), we held:
In this state, appeals are regulated by statute and only allowed in cases provided by statute... . Appeals from interlocutory orders or decrees apply only to cases in the chancery court, and no contention is here made to the contrary... .
In Jackson v. Gordon, 194 Miss. 268, 273, 11 So.2d 901, 902 (1943), Justice Griffith again speaking for this Court held:

*1223 Appeals are not matters of right, and are allowable only in cases provided by statute. When under the statute it is clear that no appeal will lie, jurisdiction thereof cannot be aided either by the consent or by the conduct of the parties  the statute itself must supply the right, else it does not exist. [Emphasis added]

Then in J.R. Watkins Co. v. Guess, et al., 196 Miss. 438, 443, 17 So.2d 795, 796 (1944), we held that "The requirements for appeals are purely statutory." "Nor are such appeals on procedural questions saved on the assertion that they avoid expense and delay[,]" we concluded in Universal Life Ins. Co. v. Keller, 197 Miss. 1, 6, 17 So.2d 797, 798 (1944).
This Court, through Justice Gillespie, held in State ex rel. Patterson v. Autry, 236 Miss. 316, 320-321, 110 So.2d 377, 378 (1959):
The right to an appeal is one regulated by statute. Steele v. Shirley, 9 Smedes & M. 382; State, ex rel. Brown v. Poplarville Sawmill Company, 119 Miss. 432, 81 So. 124. It has long been the settled law of this State that appeals are not a matter of right except insofar as the right is given by statute. Bridges v. Board of Sup'rs of Clay County, 57 Miss. 252; Jones v. Cashin, 133 Miss. 585, 98 So. 98.
We repeated in McMahon v. Milam Mfg. Co., 237 Miss. 676, 679, 115 So.2d 328, 330 (1959): "Appeals are regulated by statute, and only lie in cases provided by statute."
In Bradley, et al. v. Holmes, 242 Miss. 247, 250, 253, 134 So.2d 494, 495-496 (1961), the Court through Justice Ethridge held:
Miss.Code 1942, Rec., Sec. 1147, provides: "An appeal may be taken to the Supreme Court from any final judgment of a circuit court in a civil case * * *.
In our practice there is no interlocutory appeal from the judgment of a circuit court except where the sole ground of an order for new trial is the excessiveness or inadequacy of damages. Code Sec. 1536. There may be an interlocutory appeal from an order or decree of the chancery court if certain restrictive conditions exist. Miss.Code 1942, Rec., Sec. 1148.
* * * * * *
In summary, an appeal is not a matter of right but must fall within the statutory prerequisites. The basic one is that the appeal must be from a final judgment... . There is no final judgment against all of the parties to this suit, ... . For these reasons, we have no jurisdiction over the matter at this time, and the appeal is dismissed. [Emphasis added]
And in Miller Transporters Ltd. v. Johnson, 252 Miss. 244, 249, 172 So.2d 542, 544 (1965), we again held, "The right to appeal is a statutory privilege, granted and defined by the legislature."
Finally, in Sanford v. Board of Supervisors, Covington County, 421 So.2d 488, 490-491 (Miss. 1982), Justice Broom for this Court, unequivocally held:
As noted in Bradley v. Holmes, 242 Miss. 247, 134 So.2d 494 (1961), an appeal is not a matter of right but is subject to the statutory provisions... .
* * * * * *
The mere fact that an otherwise premature appeal may result in saving expense or delay does not allow an exception to this rule.
And what about interlocutory appeals? As noted in Bradley, et al. v. Holmes, supra, two statutes have completely governed and controlled when and under what circumstances such appeals could be made.
As to an interlocutory appeal from circuit court, Miss. Code Ann. § 11-7-213 (1972) authorizes such an appeal by either party from an order granting a new trial on either the excessiveness or the inadequacy of damages. Except for this one situation, no interlocutory appeal is authorized by statute from a circuit court. We consistently held that except for this statutory authorization the circuit court had no authority to grant, and we had no jurisdiction to hear any interlocutory appeal from a circuit court. Indeed, it did not matter if both sides consented to and wanted such an appeal, we were duty bound to note lack of subject matter jurisdiction on our own. *1224 See: Cotton v. Veterans Cab Co., Inc., 344 So.2d 730 (Miss. 1977); Southern Saw & Mower Distributors, Inc. v. Dolmar North American Corp., 317 So.2d 400 (Miss. 1975); State v. Burrill, 312 So.2d 1 (Miss. 1975); State Tax Commission v. Clinton, 267 So.2d 312 (Miss. 1972); Coats v. Coats, 227 Miss. 264, 86 So.2d 4 (1956); Bradley, et al. v. Holmes, supra; Eubanks v. Aero Mayflower Transit Co., 253 Miss. 159, 175 So.2d 169 (1965); Craig v. Barber Bros., supra. Of course, these cases follow the well established principle in effect since Mississippi became a state that in the absence of statutory authorization therefor, this Court has no jurisdiction to hear an appeal.
The statute authorizing an interlocutory appeal from chancery court is somewhat broader. Miss. Code Ann. § 11-51-7 (Supp. 1989) authorizes an interlocutory appeal from a chancery court order by either the chancellor or a member of this Court only when proper "in order to settle all the controlling principles involved in the cause, or in exceptional cases to avoid expense and delay." The statute also requires that even when an appeal is allowed it must be applied for and bond given within thirty days of the order appealed from. We consistently held that such appeals from chancery court were not favored, and were limited to those cases "categorized in the statute." Seaney v. Seaney, 218 So.2d 5 (Miss. 1969); Management, Inc. v. Crosby, 186 So.2d 466 (Miss. 1966); Burns v. Arrington, 251 Miss. 247, 169 So.2d 831 (1964); West v. Mechanical Services, Inc., 216 So.2d 174 (Miss. 1968). In examining all attempted interlocutory appeals from chancery court this Court consistently looked to ascertain whether it was a circumstance covered by the statute. If not, then we dismissed the appeal on our own. Nelson v. Ethridge, 271 So.2d 730 (Miss. 1973); Calmes v. Weill, 216 So.2d 418 (Miss. 1968); Farrar v. Phares, 232 Miss. 391, 99 So.2d 594 (1958).
If there was any one principle clearly and unequivocally recognized by this Court for over 175 years, it was the principle that this Court lacks subject matter jurisdiction to hear any appeal not specifically authorized by statute. This principle has been enunciated by great constitutional scholars on this Court who certainly understood the meaning of our Constitution, and the legitimate authority of this Court in our Constitutional scheme of government. Legal giants on this Court, Griffith, Gillespie, Ethridge have expounded it in clear and certain language.

OTHER STATES
The holdings of this Court beginning with Steele v. Shirley through Sanford v. Board of Supervisors, Covington County as to appellate jurisdiction are in the thread of the mainstream of holdings throughout the United States. Indeed, our pre-1984 decisions announced Hornbook law. In innumerable cases from the other states it is abundantly and unequivocally clear that a constitution which simply creates a supreme court as a court of appellate jurisdiction without more creates no constitutional right of appeal. All rights to appeal under such constitutions are governed solely by statute. In the absence of some specific constitutional provision as to an appeal, no appeal can be made in the absence of statute. It is likewise universally held that supreme courts have no authority to either enlarge or diminish appeals rights conferred by statute. Moreover, this subject matter jurisdiction can neither be consented to nor waived. All this can be gathered by referring to 4 C.J.S. Appeal & Error §§ 1, 2, 8, 18 (1957); 4 Am.Jur.2d Appeal & Error §§ 4, 6; the American Digests, Key Numbers 1 and 2, and the literally hundreds of cases annotated in these authorities. Without burdening the body of this opinion, a rambling sample of these holdings is set forth in an appendix.

AND THEN ALONG CAME SOUTHERN FARM BUREAU V. HOLLAND

In Southern Farm Bureau Cas. Ins. Co. v. Holland, 469 So.2d 55 (Miss. 1984), this Court granted an interlocutory appeal from an order of the circuit court overruling a motion to dismiss a suit over a claim covered by the Workers' Compensation Act.
*1225 We then through Justice Prather, noted as to its being an interlocutory appeal:
This Court does not address the question of whether this appeal from an interlocutory order of the circuit court may be heard. The point has not been raised by any party and, more specifically, the appellee has not interposed an objection to our hearing the appeal. This Court, therefore, addresses the merits of the question raised because of the time, expense and effort expended by the parties. In a supervisory capacity this action is warranted by this Court. [Emphasis added]
469 So.2d at 59.
There was a petition for rehearing, which was denied. In denying the petition, four members of the Court in a special concurring opinion (soon to become the view of the majority of the membership of the court) did address the issue of interlocutory appeal, and declared in pertinent part:
It is accepted constitutional doctrine in this and every other jurisdiction in this country that the highest court of the jurisdiction, generally denominated the Supreme Court, has subject matter jurisdiction as is vested in it by the constitution of the jurisdiction.
If this Court has any rule making power, the scope of that surely includes the procedural aspects of appeals to this Court.
* * * * * *
I suggest that there are special and unusual cases wherein, by virtue of the nature of the action and the nature of the question presented on appeal, an interlocutory appeal might settle the controlling principles involved in a case and otherwise expedite the ultimate termination of the litigation and in consequence avoid unnecessary expense or delay... . Accordingly, I would have this Court in this case declare forthrightly that any order or decree, interlocutory in nature, entered in a circuit court (or chancery court for that matter) which involves a controlling question of law as to which there is substantial grounds for difference of opinion and where an immediate appeal may settle the controlling principles of law and/or otherwise materially advance the ultimate termination of the litigation or likely avoid expense and delay to the parties, an interlocutory appeal to this Court should lie. I would overrule all of our prior cases which provide to the contrary. [Emphasis added]
469 So.2d at 63-64.
One can only assume from this decision that it never occurred to any member of this Court to read any of the seventeen cases beginning with Steele v. Shirley and concluding with Sanford v. Board of Supervisors, Covington County.
Following the pronunciamentoes of Holland, supra, this Court was off to the races.
In Kilgore v. Barnes, 490 So.2d 895 (Miss. 1986), this Court allowed and addressed an interlocutory appeal from the circuit court overruling a motion for summary judgment. The "principle" of Holland, was ratified. The Court noted that there was no reason in exceptional cases to limit an interlocutory appeal to chancery court, and "no valid reason to continue our previous rigid and inflexible rule." [Emphasis added] 490 So.2d at 896.
Thus did this Court abandon, by ignoring an understanding of our Constitution firmly entrenched by Supreme Court decisions covering a span of 175 years, that appellate jurisdiction depended solely on statutory authority, assuming instead that this Court's jurisdiction was dependent only on a court rule which we were free to change.[1]
*1226 In Sonford Products Corp. v. Freels, 495 So.2d 468 (Miss. 1986), this Court, permitted and addressed an interlocutory appeal from a Workers' Compensation Commission order remanding a claim to the administrative law judge for further hearing.
Craig v. Barber, 524 So.2d 974 (Miss. 1988), is interesting. Pursuant to a building contract's provision and arbitration statutes, Miss. Code Ann. § 11-15-101 et seq., arbitrator Craig had entered an award in favor of a homeowner. In a suit by the homeowner in circuit court to enforce the arbitration award, the circuit judge entered an order directing Craig to "clarify and explain" his finding. 524 So.2d at 975.
Instead of answering, Craig (with the legal assistance of the homeowner's lawyer) applied to this Court for a writ of prohibition to the circuit judge to vacate the order.
There were two defects as to this proposed relief: (1) no statute authorized this Court to issue such a writ to a trial court, and (2) three decisions of this Court had held a writ of prohibition could not be issued in a civil case. State v. Maples, 402 So.2d 350 (Miss. 1981); Wynne v. Railroad, 105 Miss. 784, 66 So. 411 (1914) directly in point and directly opposite; Planters Insurance Co. v. Cramer, 47 Miss. 200 (1872).
Faced with this impediment, this Court did a little two-step. Through our inherent power to grant interlocutory appeals, our Court unanimously held: "We convert and treat his application as one for an interlocutory appeal." [Emphasis added] Then, having the matter before us on an "interlocutory appeal," we simply ignored judicial precedent, got ourselves right in the middle of trial court proceedings, and addressed the merits.[2] We held the information the circuit judge sought to elicit from Craig was irrelevant, and issued the writ ordering the judge not to require Craig to answer.
Conceding this Court was correct in our tenuous holding that this information was irrelevant, a modest reflection reveals that the information the circuit judge sought to gain from Craig was by no means privileged. It was work Craig had performed for both the homeowner and contractor.[3]
Therefore, when Craig was directed by the circuit judge to answer the question, he could have gone ahead and answered it. Then, if the case came before us on appeal, we could have held it irrelevant and the circuit judge had no right to consider the basis of Craig's award, even though he had simply recited "Eeney-meeney-miney-mo; which one should have the dough?" in making it. Or, Craig could have refused to answer it, and if the circuit judge held him in contempt, appealed the contempt citation. Miss. Code Ann. § 11-51-11, -12. Under our holding in this case, either one of those courses would have produced the same end result, namely: that the information sought was irrelevant and should bear no weight in enforcing the arbitration award. If, as we held, the circuit judge had no lawful authority to require an answer, then Craig would not have been in contempt in refusing to do so.[4]
Thus, Craig v. Barber, in addition to its illumination on arbitration law, reinforced our recent principle that appeals to this Court were governed by our own rules, not by statute, and also held that a member of this Court may grant an interlocutory appeal to a witness who does not want to answer an irrelevant question put to him in circuit court.
Again, conceding for the sake of argument the information ordered from Craig was irrelevant to a court decision, as a practical matter it may have been useful and in the best interest of this State to have required an answer. If indeed Craig only recited "Eeney-meeney-miney-mo" to *1227 make his arbitration award, the Legislature might want to reconsider the Act, and require a slightly more substantial basis in future arbitration awards.

SUPREME COURT RULES
Effective January 1, 1988, we adopted the Mississippi Supreme Court Rules prepared by the Advisory Committee on Rules. The Advisory Committee would have rendered immeasurable service to the State, in my view, if they had inquired from whence this Court acquired the authority to bestow a "right" of appeal where none existed by statute. One must surmise that the Advisory Committee assumed the members of this Court had known what they were doing in Holland, Kilgore v. Barnes, and Sonford Products.
In any event, Rule 3 of these Rules contains the following sentence: "All statutes, other sets of rules, decisions or orders in conflict with these rules shall be of no further force or effect." No longer would our appellate jurisdiction be governed solely by statute, but by our rules.
Rule 5 encompasses all the grounds for interlocutory appeals to this Court. Despite the absence of statutory authority therefor, this rule authorizes interlocutory appeals from circuit court. As the comment notes, it changes Miss. Code Ann. § 11-51-3 governing appeals to this Court, and Miss. Code Ann. § 11-51-7 governing interlocutory appeals from chancery court is amended, except insofar as the statutory grounds for interlocutory appeal coincide with Rule 5.
Rule 5 is essentially Rule 5 of the Federal Rules of Appellate Procedure and 28 U.S.C.A. § 1292(b), the difference being that in the Federal Rules there is a specific congressional Act authorizing interlocutory appeals, and the Federal Rules themselves were specifically authorized by congress, 28 U.S.C.A. § 2072. We adopted our rules under an "inherent power" or our "supervisory capacity" per Holland, supra, to do so.
Thus have the members of this Court decreed an inherent power to amend, supplant and repeal statutes governing appeals to the Mississippi Supreme Court.
In the case of In re Knapp, 536 So.2d 1330 (Miss. 1988), a witness in a civil case refused to answer questions on grounds it could incriminate him, and was held in contempt. Instead of making an appeal as authorized by Miss. Code Ann. § 11-51-11, -12, the statutes making it quite simple to appeal from an order adjudging a person in contempt, Knapp petitioned for an interlocutory appeal, granted by this Court, and the Court, addressed the merits of the interlocutory appeal.
In American Elec. v. Singarayar, 530 So.2d 1319 (Miss. 1988), with no cognitive dissonance from any member of this Court, at 530 So.2d 1321, footnote 3, we held that "Effective January 1, 1988, the Mississippi Supreme Court Rules became this state's only legally authorized avenue of appeal interlocutorily ..." [Emphasis added] The opinion then makes a valiant if vainglorious attempt to explain Rule 5.
In Gibson v. Manuel, 534 So.2d 199 (Miss. 1988), a creditor sought an injunction in circuit court to prevent a sole shareholder from looting the debtor corporation. Rule 65(e) of the Mississippi Rules of Civil Procedure (MRCP), a Rule of somewhat dubious validity, bestows jurisdiction to hear injunction cases in a circuit as well as chancery court.[5] The circuit judge refused to enter an injunction. Although the creditor may have obtained relief under Miss. Code Ann. § 9-1-7 or Miss. Code Ann. § 9-3-33, he quite properly under our Rule 5 petitioned for and obtained an interlocutory appeal, which a unanimous Court, addressed on the merits.[6]
*1228 In Donald v. Reeves Transport Co., 538 So.2d 1191, 1194 (Miss. 1989), this Court, through Justice D. Lee, made a salutary change in direction when, in addressing the merits of an interlocutory appeal, we held:
Nor can jurisdiction be conferred on this Court by stipulation of the parties. Slater v. Bishop, 251 Miss. 306, 308-309, 169 So.2d 465, 467 (1964) ("Though the right of the appellant to appeal is not contested by appellees, it is nevertheless the duty of this Court to raise the question which involves jurisdiction, on its own motion, of whether this appeal from the interlocutory decree will lie.")
The direction was ephemeral. This case was shortly succeeded by Tillotson, et al. v. Anders, 551 So.2d 212 (Miss. 1989), in which this Court granted an interlocutory appeal from a refusal by the chancellor to transfer a cause pending before him to the circuit court of the county. Then, in my view at least, we not only ignored precedent to the contrary, but also we simply erased Art. 6, § 147 of our Constitution and ordered the chancellor to transfer the cause to circuit court.[7]
This was followed by McDaniel, Administrator of Speaks v. Ritter, 556 So.2d 303 (Miss. 1989), a case in which the circuit judge decided in a motion for a new trial that he had made a mistake in granting an instruction to the jury. He ordered a new trial. Ignoring all precedent to the contrary, we granted an interlocutory appeal, and addressed all issues in the case, not simply the issue raised on the appeal.

THE TRANSITION
Until 1984 an appeal to this Court was governed entirely by statutes, and made only when and if: (1) the case had been tried and concluded in circuit or chancery court, a final judgment entered, and that court was through with it. Then, (2) assuming the appropriate statutory appeal notice and appeal bond were given, this gave this Court its appellate jurisdiction. In the absence of any of these pre-requisites we had no Constitutional authority to consider the case. Until then, we had no official interest in the case, or jurisdiction to consider it.[8]
This has changed. Since 1984 we have not been dependent on any statute for an interlocutory appeal, but solely a rule we made and interpret as we please which applies. As Anders and McDaniel illustrate, it is a rule of unlimited elasticity. We need not bother waiting until the trial is over and final judgment entered. Moreover, we have used interlocutory appeals as vehicles to promulgate radical departures from settled law; e.g. Holland, Anders, Craig v. Barber, supra.
When the members of this Court declare we have this "inherent authority" it flies in the face of everything this Court and this State stood for on this subject in the last 175 years. Indeed, I would seriously question the Constitutional validity of any statute which attempted to give this Court the authority to grant appeals by Court rule. It would be transferring a Legislative responsibility under our Constitution to the Judiciary.
Our post-1984 decisions beginning with Southern Farm Bureau Cas. Ins. Co. v. Holland, and the consequent Rule 5 of MSCR are predictable offspring of what can only be kindly termed a "philosophy" that each generation on this Court is free to disregard the plain understanding our forefathers had and expressed of our Constitution. More lamentable misadventures will follow.
*1229 When we relegate unto ourselves the authority to place whatever meaning we choose on words in our Constitution  when we feel no obligation to attempt to distinguish, or least overrule clear judicial decisions  choosing instead to arrogantly or disingenuously ignore them in our solemn pronouncement of novel legal principles, what else can you expect?
Currently our function is not to apply settled law and decide cases, but as idealogues promote an agenda. As idealogues we have no compunction to apply law, but are free  as legislators  to change it, and enact what we think is best. Legislators wearing robes.
DAN M. LEE, P.J., joins this opinion.

APPENDIX
It should first be noted that most state supreme courts, either by express constitutional authority to promulgate rules of practice and procedure and/or to superintend and control trial courts, or else express Legislative statutory authority therefor, have been granted the power to make rules of practice and procedure.
Our Constitution gives this Court no such authority, but rather Art. 6, § 146 states in pertinent part:
The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals and shall exercise no jurisdiction on matters other than those specifically provided by this Constitution or by general law.[1a]
The point of these observations is to make clear that even though supreme courts and appellate courts in other states may have been given broad constitutional or statutory authority to promulgate rules of practice, even to the exclusion of the Legislature, this does not give those courts power to grant appeals on their own. The right of appeal in those states remains, as we consistently held in this State for 175 years, purely a creature of statute.

ALABAMA
A state in which the Supreme Court is both by constitution and legislative enactment given broad powers to make rules of procedure in trial and appellate courts, nevertheless noted in John Crane-Houdaille, Inc. v. Lucas, 534 So.2d 1070, 1073 (Ala. 1988): "A litigant does not have a vested right to a review by an appellate court; rather he obtains a right to appeal, if at all, by grace of statute." And, in Ex Parte Ward, 540 So.2d 1350, 1351 (Ala. 1988), the Court added:
There are, however, some limitations on our authority to promulgate and effectuate rules. "[R]ules shall not abridge, enlarge or modify the substantive right of any party." ... Nor, generally, can a rule of court enlarge or restrict jurisdiction. [Emphasis added]

ARIZONA
The Arizona Constitution gives the Supreme Court of that state exclusive authority to promulgate rules of procedure. Art. 6, § 5, Ariz. Const. The Arizona Supreme Court nevertheless held in Matter of Appeal in Pima County Juvenile Action, 660 P.2d 1205, 1207 (Ariz. 1982):
The substantive right to appeal in any class of cases can be created only by constitution or statute.... Although the procedural aspects of processing an appeal are subject to the exclusive regulation of this court, the substantive right to appeal is statutory and this court may not diminish or alter that right.
CALIFORNIA
It is settled the right of appeal is statutory and a judgment or order is not appealable unless expressly made so by statute... . There is no federal nor state constitutional right to an appeal or other review of a judicial decision. The *1230 Legislature may abolish the right altogether.
Agricultural Labor Relations v. Abatti Produce, 168 Cal. App.3d 504, 214 Cal. Rptr. 283 (4th Dist. 1985).
The right of appeal is wholly statutory... . Thus, in general, no judgment or order is appealable unless it comes within one of the classes enumerated in the statutes. An order granting partial judgment on the pleadings is not among those interlocutory orders which Code of Civil Procedure section 904.1 makes appealable.
Uptain v. Duarte, 206 Cal. App.3d 1258, 254 Cal. Rptr. 150, 152 (5th Dist. 1988).
CONNECTICUT
It has been repeatedly held that the right to appeal exists solely by statute and that statutes circumscribe and govern the appeals which are taken pursuant to them.
* * * * * *
[J]urisdiction over the subject matter of a proceeding cannot be conferred by consent or waiver.
Dondero v. Administrator, Unemployment Comp. Act, 30 Conn.Sup. 105, 302 A.2d 127, 128 (1972).
The right to an appeal is not a constitutional one. It is a statutory privilege, available only to one who has strictly complied with the rules pertaining thereto... . Unless the statute and applicable rules of law clearly permit such appeals, the courts are without jurisdiction to entertain them. [Emphasis added]

City of Hartford v. Connecticut Natural Gas Corp., 31 Conn.Sup. 65, 321 A.2d 869, 874 (1973).
GEORGIA
The technical right of appeal was not known to the common law; it exists only by virtue of the statute or constituional provision. [citations omitted] Therefore, a party has no vested right to an appeal from one court to another. [citations omitted] In National Union etc. Assn. v. Arnold, 348 U.S. 37, 75 S.Ct. 92, 99 L.Ed. 46 (1954) the Supreme Court stated that the provision of the Fourteenth Amendment to the United States Constitution requiring due process of law does not contemplate the right to appeal. Where such right of appeal is given, the state may prescribe the conditions and procedure to be followed... .
Alexander v. Blackmon, 129 Ga. App. 214, 199 S.E.2d 376, 378 (1973).
The right of appeal in Georgia is not absolute. [citations omitted] There is no section of the Constitution which specifically provides for an appeal. [citations omitted] The State Constitution provides that the superior courts shall have appellate jurisdiction in such cases as the General Assembly may by law provide. [citations omitted] Furthermore, the Constitution gives the General Assembly the authority to enact laws placing conditions upon appeals... .
Hancock v. Board of Tax Assessors of Harris County, et al., 226 Ga. 570, 176 S.E.2d 102, 103 (1970).
IDAHO
The right of appeal is statutory... . Absent a statutory basis for appeal, there is no right to appeal.
Matter of Estate of Spencer, 106 Idaho 316, 318, 678 P.2d 108, 110 (1984).
IOWA
All appeals are pure creatures of statute.
* * * * * *
Furthermore, an appellate tribunal derives its jurisdiction from the law. It cannot be acquired by estoppel or consent alone.
Antrim v. Civil Service Com'n of City of Des Moines, 261 Iowa 396, 154 N.W.2d 711, 714 (1967).
"It is fundamental that the right of appeal is purely statutory and may be granted or denied by the legislature as it determines. Unless the statute makes *1231 provision therefor, expressly or by plain implication, there is no right of appeal."
Boomhower v. Cerro Gordo County Board of Adjust., 163 N.W.2d 75, 76 (Iowa 1968).
KANSAS
We have consistently held the right to an appeal is neither a vested nor a constitutional right, but is strictly statutory in nature. This right may be limited by the legislature to any class of cases, or in any manner, or it may be withdrawn completely.
Haas v. Freeman, 236 Kan. 677, 693 P.2d 1199, 1204 (1985).
MAINE
The right of appeal is not a constitutional one; nor does it arise under the common law; it is purely statutory. [citations omitted] The Legislature, in granting a right to appeal in certain cases, may restrict, limit or otherwise condition its availability as it sees fit. All statutory requirements for perfecting an appeal are jurisdictional and require strict compliance.
Rice v. Amberling, 433 A.2d 388 (Me. 1981).
MISSOURI
The right of appeal is statutorily governed by § 512.020, RSMo 1978 and Rule 81.06 cannot extend it.
Wirthlin v. Wirthlin, 662 S.W.2d 571, 572 (Mo. App. 1983).
It is elementary that the right of appeal is purely statutory.
Roberts v. Harms, 698 S.W.2d 608, 610 (Mo. App. 1985).

NEW MEXICO
Art. VI, § 3 of the New Mexico Constitution gives the Supreme Court broad powers, including "superintending control over all inferior courts." Art. VI, § 2 also gives an aggrieved party an absolute right to one appeal, a provision absent in most state constitutions.
In State v. Garcia, 101 N.M. 232, 680 P.2d 613, 615 (Ct.App. 1984), the Court of Appeals noted: "The inherent power to prescribe rules and regulate pleadings, practice and procedure in all courts of this State is vested in the Supreme Court under N.M. Const. art. III, § 1, and N.M. Const. art. VI, § 3."
Yet, in Hillhaven Corp. v. Human Services Dept., 108 N.M. 372, 772 P.2d 902, 903 (Ct.App. 1989), the Court held:
[A] right of appeal is conferred by substantive law and is outside the supreme court's rule-making ability... . The supreme court is powerless to create a substantive right of appeal by adopting a rule.
* * * * * *
[T]his court is without jurisdiction to consider the matter.
772 P.2d at 904.
NEW YORK
The right to appeal is not an inherent one, but rests upon the statute alone... . We cannot by construction extend the statutory limitations thus placed upon our jurisdiction which are clearly defined.
Stull v. Then, 247 A.D. 85, 286 N.Y.S. 914, 916 (1936).
There is no inherent right to appeal either in civil or criminal matters. There must be statutory authority therefor.
In re Reardon, 278 A.D. 206, 104 N.Y.S.2d 414, 417 (1951).
OHIO
There is no right independent of statute to appeal in any case by anyone.
City of Cincinnati v. Kellogg, 86 Ohio App. 518, 92 N.E.2d 609, 612 (1949).
OREGON
Analysis of appealability begins with the recognition of some basic precepts. A party does not have an inherent right to appellate court review; the right to appeal is wholly statutory and an appellant must establish that the decision from which the appeal is taken is appealable under some statutory provision.
*1232 Waybrant v. Bernstein, 294 Or. 650, 661 P.2d 931, 933 (1983).
PENNSYLVANIA
This Court has long recognized that the Legislature has the right to preclude appeals.
City of Washington v. Police Department, 436 Pa. 168, 172, 259 A.2d 437, 439-440 (1969).

SOUTH DAKOTA
In 1898 the Supreme Court of South Dakota settled in that state the question of whether a constitutional provision creating a state supreme court which would have "appellate jurisdiction," without more, constitutionally granted a right of appeal. That Court, as other state courts have consistently held, said it did not.
[T]hat section does not attempt to define or prescribe in what cases an appeal may be taken to the supreme court. The object and purpose of the section seems to be to define and limit the jurisdiction of the supreme court, and not in any manner define the class of cases in which an appeal might be taken. The language of the section, defining and limiting the jurisdiction of the supreme court, cannot, by any fair construction, be held to confer upon parties the right of appeal in all cases of which the supreme court has been given jurisdiction. It is quite clear from the provisions of sections 18 and 20 that the framers of the fundamental law intended to leave the power over the subject of appeals to the legislature, to be exercised in such manner as public policy and the best interests of the people might require.
McClain v. Williams, 10 S.D. 332, 334, 335, 73 N.W. 72, 73-74, 43 L.R.A. 287, 288 (1897).
VERMONT
The right of review in this Court, which the respondent seeks, is not provided by statute, and without such authority this Court has no jurisdiction to entertain an appeal.
State v. LaPlaca, 126 Vt. 171, 224 A.2d 911 (1966).
WISCONSIN
The right of appeal is not discretionary with the Supreme Court, and jurisdiction can only be acquired by this court or by the circuit court acting as an appellate court under the rules of appealability established by the legislature. In Mequon v. Bruseth (1970), 47 Wis.2d 791, 794, 177 N.W.2d 852, 854, we said:
In order for there to be a right of appeal some statute must grant it and a party seeking to appeal must follow the method prescribed in the governing statute. [Emphasis added]

Walford v. Bartsch, 65 Wis.2d 254, 258, 222 N.W.2d 633, 635 (1974).
WYOMING
The right of an appeal is a privilege rather than a right.
... It is well settled that, in the absence of a direct constitutional requirement, the right of appeal does not exist unless expressly conferred by statute. The right to have a judgment of an inferior tribunal reviewed by writ of error or appeal is not a natural or inherent right. It pertains merely to the mode of judicial procedure or the remedy. Unless it is guaranteed as a matter of right in the Constitution, the Legislature has power to pass laws not only regulating the mode of proceeding, but limiting the cases in which the right may be exercised. [Emphasis added]

The legislature has authority to abridge or extend the right of appeal at its discretion and can determine in what cases and under what circumstances appeals may be taken[.]
Geraud v. Schrader, 531 P.2d 872, 875 (Wyo. 1975).
4 C.J.S. Appeal and Error § 18, pp. 94-100 (1957), states:
It [remedy of appeal] was entirely unknown to the common law. Consequently, the remedy by appeal in actions at law and in equity is purely of constitutional *1233 or statutory origin, and exists only when given by some constitutional or statutory provision, and the courts have no inherent authority with respect thereto.
b. Power of Legislature over Remedy
* * * * * *
Except where the right of appeal is secured by the constitution so as to have become a constitutional right, it is, in accordance with the general principles stated supra §§ 1, 8a, dependent entirely upon statute, and is subject to the control of the legislature, which may, in its discretion, grant or take away the remedy, and prescribe in what cases, under what circumstances, in what manner, and to or from what courts, appeals may be taken.
4 Am.Jur.2d Appeal and Error § 6 (1962) states:
Except to the extent that constitutional provisions impose limitations, the legislatures of the several states and of the federal government have authority to abridge or extend the right to an appeal at their discretion. Even the existence of a general constitutional right to appeal does not preclude reasonable legislative regulation and control of the right, and absent specific constitutional provisions, the legislature may ordinarily determine in what cases, under what circumstances, and from what courts, appeals may be taken. [Emphasis added]

SULLIVAN, Justice, Dissenting:
Respectfully, I must dissent. Not only has the majority erred in granting this interlocutory appeal, they have also erroneously applied Miss. Code Ann. § 15-1-35 (1972), as Amended, in deciding this case. It appears that the majority has hooked a fish which this Court is not authorized to catch and then proceeded to kill it while trying to land it in our judicial boat.

Interlocutory Appeals
Believing that there was little reason to allow interlocutory appeals from chancery court but not from circuit court, we adopted Miss.Sup.Ct. Rule 5. We adopted that rule under the impression that cases could be disposed of more expeditiously. Experience has proved us wrong. While certainly within our power to adopt, Rule 5 was a mistake.
Our indulgence in granting interlocutory appeals from circuit courts has taken us far away from the scope and spirit of our Rules of Civil Procedure. We should abandon Miss.Sup.Ct. Rule 5, through which we now grant interlocutory appeals from circuit courts. Such appeals have proven counterproductive and contrary to the comments to Rule 1, M.R.C.P. which state, in part:
* * * * * *
The salient provision of Rule 1 is the statement that "These rules shall be construed to secure the just, speedy, and inexpensive determination of every action." There probably is no provision in these rules more important than this mandate: it reflects the spirit in which the rules were conceived and written and in which they should be interpreted. The primary purpose of procedural rules should be to promote the ends of justice; these rules reflect the view that this goal can be best accomplished by the establishment of a single form of action, known as a "civil action," thereby uniting the procedures in law and equity through a simplified procedure that minimizes technicalities and places considerable discretion in the trial judge for construing the rules in a manner that will secure their objectives.
* * * * * *

The keystone to the effective functioning of the Mississippi Rules of Civil Procedure is, obviously, the discretion of the trial court. The rules grant considerable power to the judge and only provide general guidelines as to the manner in which it should be exercised. Accordingly, judges must view the rules with a firm understanding of the philosophy of the rules and must exercise a wise and sound discretion to effectuate the objective of the simplified procedure. The rules will remain a workable system only so long as trial judges exercise *1234 their discretion intelligently on a case-by-case basis; application of arbitrary rules of law to particular situations will have a debilitating effect on the overall system. (Emphasis supplied).
Our judicial system will succeed only if trial judges exercise their discretion. Interlocutory appeals from circuit courts place our system in jeopardy because circuit judges now have an effective means for avoiding the exercise of any discretion at all. Putting our collective egos aside as justices, the trial judges of this state are presumed competent and are better equipped than we to decide these type cases. In adopting Rule 5, we abused our discretion.

Statute of Limitations
The majority treats State for Use of Smith v. Smith, 156 Miss. 288, 125 So. 825 (1930), as if it only involved a suit on a bond. Such a view of that case disregards the fact that, in Smith, we reversed the trial court's imposition of the one year statute of limitations for intentional torts on two separate and distinct grounds. In their effort to legislate judiciously, the majority chooses to ignore the following passage, where we said:
It will be observed that the causes of action set forth in the statute result from breaches of duties which all persons owe to every other person, and do not cover the breach of a duty specially imposed by law on one for the benefit of another. Under 4664, Code 1906 (Hemingway's 1927 Code, Section 3286), a sheriff is liable on his official bond for the official misconduct of his deputies; and one of the duties imposed by law on a sheriff and his deputies is to exercise due care while making arrests, and not to unnecessarily injure persons arrested. The declaration sets forth not a mere assault and battery, or maiming, but a breach of the sheriff's official duty, the assault and battery, or maiming, being the particular breach thereof; and the cause of action is this breach of the deputy sheriff's official duties. The statute, therefore, does not apply. (Emphasis supplied).
156 Miss. at 292, 125 So. at 826
In Smith, we expressly recognized that an assault and battery committed by an officer of the law is different from an assault and battery committed by a private citizen. The majority chooses to distinguish the current case from Smith merely because Smith involved a suit on the sheriff's official bond. Such a distinction fails to recognize that the suit on the bond was an independent alternative ground in that decision:
There is another reason why the statute does not here apply, which is that the official bond of public officer is a contract which the law requires him to execute, by which he and his sureties covenant and agree that he will faithfully discharge all of the duties of his office, which contract is breached by the failure of the officer to discharge any of his official duties. (Emphasis supplied).
156 Miss. at 292-293, 125 So. at 826
Our decision in Smith was reached through our interpretation of §§ 2640 and 2635 of Hemingway's Code of 1927, the predecessors to the statutes of limitations, §§ 15-1-35 and 15-1-49, which are currently at issue. Despite our interpretation that a policeman's act of assault and battery is governed by the catch-all statute of limitations not the intentional tort statute, the legislature, in reenacting these statutes several times since the Smith decision, has consistently adopted the exact language which was used in 1927. In Garrett v. Mississippi State Highway Commission, 227 So.2d 856, 857 (Miss. 1969), we recognized, "In accord with familiar rules of construction, the legislature by reenactment of a statute which has been construed by the highest court of a state, adopts the construction placed upon the statute by the court." (Emphasis supplied).
In Choctaw, Inc. v. Wichner, 521 So.2d 878, 880 (Miss. 1988), we said, "We digress at this point to point out that under the general rules of statutory construction the construction placed upon the statute by *1235 this Court, which was later readopted, in effect becomes part of the legislation." Continuing, we quoted from Crosby v. Alton Ochsner Medical Foundation, 276 So.2d 661, 670 (Miss. 1973):
The construction that we have placed on the ... statute has in effect been approved by the legislature. The legislature has met many times since 1855 without any enactment directed toward the ... statute and thereby has approved the construction of the legislative intent placed thereon. Thus, the decision ... has become in effect, a part of the statute. When a statute is repeatedly re-enacted in essentially the same language and by its retention in all subsequent codes, a decision of this Court interpreting the statutes becomes in effect a part of the statute. Therefore, if the statute is to be amended, it should be done by the legislature and not by judicial decision. (Citations omitted), (Emphasis supplied).
With this "familiar rule of construction in mind," we remind the majority that §§ 15-1-35 and 15-1-49 have been worded in the same exact language for the past century. More importantly, since our construction of these statutes of limitation in our 1930 Smith decision, the legislature, by refusing to alter the language employed in these statutes, has adopted the construction which this Court placed upon them. See Codes 1880, §§ 2673 and 2669; 1892, §§ 2742 and 2737; 1906, §§ 3102 and 3097; Hemingway's 1917, §§ 2466 and 2461; 1927, §§ 2640 and 2635; 1930, §§ 2302 and 2292; 1942, §§ 732 and 722. It is quite apparent that the action proposed by the majority amounts to judicial legislation.
Had we declined the interlocutory appeal, further development of the facts in the trial court could have shown whether Officer Thompson acted in a negligent manner, in disregard of established police procedures. However, because the majority felt better qualified to decide the case on the merits than the circuit judge, one will never know. Because of this, I dissent.
BLASS, J., concurs in part.
BLASS, Justice, Dissenting:
I dissent. Essentially, I agree with that portion of Justice Sullivan's dissent which deals with law pertaining to the statute of limitations. The majority opinion simply rejects the plain, positive, long-established holding of this Court that when a police officer, under color of his office, armed and representing the majesty and power of the State, and standing as the symbol of the law and the guardian of the citizen's rights, abuses that power, attacks and brutally and unmercifully beats a citizen whom he is sworn to protect, the offense is different from a beer-hall brawl.
The case of State for the Use of Smith v. Smith, 156 Miss. 288, 125 So. 825 (1930) is neither poorly reasoned nor wrongly decided. The majority opinion is simply wrong in its holding that assault is an assault is an assault. Smith, supra, held that an assault by an officer was something else, as it clearly ought to have held. We ought to so hold now. As Justice Sullivan points out, the Smith interpretation of the statute, Miss. Code Ann. § 15-1-35 (1972), as amended, has been, in effect, adopted by the legislature by re-enactment since the Smith decision and we have not the right to change it.
I do not join in the attack on Miss.Sup.Ct. Rule 5.
NOTES
[1] Apparently the dismissal of the Section 1983 claim and remand to state court were with the acquiescence of both plaintiff and defendants. The District Court's order recites

Plaintiff subsequently filed his motion to dismiss his § 1983 claim and to remand the state law claims to state court. As grounds therefor, plaintiff agreed with defendants that Count III, the § 1983 claim, is time-barred by Gates v. Spinks [771 F.2d 916 (5th Cir.1985)] and Mississippi's one-year statute of limitations. Plaintiff further contends that since only state law claims remain, then this action should be remanded to state court. Defendants do not oppose plaintiff's motion upon the condition that the § 1983 claim is dismissed with prejudice.
Johnson took no appeal from that order to the United States Court of Appeals for the Fifth Circuit. In view of his "acquiescence" in the dismissal of his Section 1983 claim, it is unlikely any such appeal would have been successful. But see Owens v. Okure, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), discussed in Part V, infra.
[2] Nothing said in this opinion should be taken as expressing any view on the merits of Defendants' various immunity defenses.
[3] Smith and Alexander also involve suits against the surety on an official bond. Each holds that the action on such a bond is in effect a suit on a contract and for that reason outside the one-year assault and battery statute of limitations. Nothing in today's case affords us an occasion to reconsider or question the limitations period affecting an action against a surety upon an official bond.
[4] For an all inclusive listing of recognized intentional torts, see Restatement (Second) of Torts, Division One (1964).
[5] The legalistic distinction between the two torts is noted in Parker v. Mississippi Game and Fish Commission, 555 So.2d at 728-29. Though those distinctions obtain, factually the two torts are becoming quite similar.
[6] Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
[7] In King v. Otasco, Inc., 861 F.2d 438, 442 (5th Cir.1988), the Court of Appeals "guessed" that we would hold an action for intentional infliction of emotional distress subject to Section 15-1-35. In Andrews v. GAB Business Services, Inc., 443 F. Supp. 510, 513 (N.D.Miss. 1977), the District Court held an invasion of privacy action similarly limited. But see Blackwell v. Hustler Magazine, Inc., 633 F. Supp. 870 (S.D.Miss. 1986).
[8] Effective July 1, 1989, the limitations period of Section 15-1-49 was reduced to three years. Miss. Laws Ch. 311, § 3 (1989).
[9] See note 1, supra. In his brief before this Court, Johnson states:

In light of Gates v. Spinks, 771 F.2d 916 (C.A.5th Cir.Miss. 1985), the Plaintiff filed and the Court granted Plaintiff's Motion to Withdraw Count III of the Complaint, a claim brought under 42 USCA Section 1983, which motion was granted on July 23, 1986, and remanded Counts I and II of the Complaint to the State Court from which removed.
[10] Contrast Kozam v. Emerson Electric Co., 711 F. Supp. 313 (N.D.Miss. 1989) with Johnson v. Madison County, Mississippi, 714 F. Supp. 805 (S.D.Miss. 1989).
[1] In all likelihood some of the members of this Court when Steele v. Shirley, and it progeny were decided had also been members of the Constitutional conventions when Art. 6, § 146 or its predecessor sections (Art. 6, § 4, 1869 Constitution; Art. 4, § 4, 1832 Constitution) were adopted. Can they have so woefully misunderstood what it meant? They were wrong in their interpretation, and we right? Indeed we did not even do them the honor of addressing their decisions, we just ignored them.
[2] State v. Maples, supra, et al., are not mentioned in the opinion.
[3] Indeed, it piques your curiosity that Craig (or the homeowner) was so anxious to keep this a secret.
[4] This would have done no violence to Constitutional provisions on this Court's jurisdiction, and its only danger would have been to arbitration law.
[5] It is a historical fact that the basis for equity jurisdiction of a suit for an injunction is the inadequacy of a remedy in circuit court, Griffith, Chancery Practice, § 434; Bus Lines, Inc. v. Ass'n. St. E.R., 205 Miss. 354, 374, 38 So.2d 765, 768 (1949). Does this Court by a rule have the authority to bestow upon circuit judges a power it has been recognized for 175 years they did not have? Miss. Const. Art. 6, § 159(a); Miss. Code Ann. § 9-5-81.
[6] Had this case been filed in chancery court, there likewise may have been statutory authority for this Court to grant an interlocutory appeal. Miss. Code Ann. § 11-51-7. Also: Mississippi Power & Light Co. v. Town of Coldwater, 234 Miss. 615, 643, 644, 99 So.2d 443, 445 (1958).
[7] § 147 is a Constitutional prohibition against this Court reversing any case on appeal because it was brought in the wrong trial court. We made it meaningless by granting a right of interlocutory appeal on the issue.
[8] True, as noted in certain limited circumstances by statute there could be an interlocutory appeal from a chancery court, or an interlocutory appeal from a circuit court solely on damages. And, other statutes gave us supersedeas authority and to issue certain remedial writs.
[1a] In previous dissents I have had occasion to note our Court has no constitutional grant of authority to promulgate rules of procedure, or to superintend trial courts. I am not attempting to repeat those specific contentions here. This case involves Constitutional authority to grant an interlocutory appeal.